SALOME AMBROSE, PLAINTIFF, v. THE METROPOLITAN
LIFE INSURANCE COMPANY, DEFENDANT.

Decided December 11, 1939.

For the plaintiff, *Anthony J. Cafiero* (*Jonathan W. Acton*).

For the defendant, *Cassman & Gottlieb*.

JAYNE, C. C. J.    It is stipulated that the controversial issues of law and fact arising from the evidence introduced at the trial of this action are to be determined by the court without a jury.

This is an action founded upon a contract of insurance. The plaintiff as the designated beneficiary seeks to recover from the defendant the sum of $1,000 alleged to have become payable to her in consequence of the death of her husband. The policy was issued by the defendant to the W. J. McCahan Sugar Refining and Molasses Company on November 30th, 1925, and it was thereafter continuously renewed.   It is known as a "Group Policy" insuring the lives of the employes of the McCahan Company, essentially similar, presumably, to that scrutinized in *Venditto* v. *Spratt's Patent* (*America*), *Ltd.,* 113 *N. J. L.* 357.   Individual certificates are issued pursuant to the terms and conditions of the policy to the designated employes.

A certificate bearing Serial Number 1135 was admittedly issued by the defendant to the employe, Adam J. Ambrose, on July 15th, 1935.   This certificate evidences the undertaking of the defendant to pay to the plaintiff $1,000 if the death

of Adam J. Ambrose should occur while he is in the employ of the McCahan Company and while the group policy is in force. The group policy itself was undoubtedly in force when Adam Ambrose died on January 11th, 1936.

The only factual element of the plaintiff's alleged cause of action that seems to have been drawn into dispute at the trial is whether or not Ambrose was in the employ of the McCahan Company, within the intent and meaning of the policy, at the time of his death. The determination of this question of fact controls the decision of the present case.

In the policy there are such phrases as: "termination of employment;" "ceased to be in its employ;" "left said employment;" and "while the employe is in the employ of the employer." An examination of the policy evinces that these phrases refer to the existence of the relationship of employer and employe and to the status or position of the deceased in that regard at the time of his death. The word "employment" is intended to indicate the status of the holder of the certificate in relation to his employer. The phrase "termination of employment" assuredly does not mean the mere cessation of active service. This becomes at once apparent from the discovery in the policy of the following provision: "Lay-off or Leave of Absence, of two months or less, shall not be considered, * * * termination of employment within the meaning of this Policy unless notification to the contrary shall have been given by the Employer to the Company, &c." The policy obviously did not contemplate steady and constant service by the employes. An employe might only work one or more days in a fortnight and still continue to be in the employ of the company. The phrases previously quoted must mean such a termination of the relationship of employer and employe as will make applicable and effective all parts of the insurance contract.

The decisive facts must, therefore, be gathered from the evidence. Concisely stated, the evidence reveals that on the night of January 6th, 1936, Ambrose was actually at work at the refinery of the McCahan Company in Philadelphia, where he had previously been regularly employed. At two o'clock on the morning of January 7th, 1936, a detective of

the local police department, accompanied by a member of the New Jersey state police, visited the refinery and asked a watchman stationed at the gate for permission to interview Adam Ambrose. These officers had no warrant or other process for the arrest of Ambrose.

It may be here observed that in the circumstances just related, it is not to be inferred that the detectives then informed anyone at the refinery that Ambrose was being apprehended for any capital or criminal offense. There is no proof that they divulged any such information at that time. The power of a foreman to discharge an employe was limited, it is said, to cases of disobedience or misconduct of an employe committed in his presence. The occurrences on the morning of January 7th, 1936, do not justify the inference that Ambrose was then discharged from his employment by any authorized representative of the McCahan Company.

Additional evidence discloses that Ambrose met the detectives and accompanied them to the detective bureau in Philadelphia where he was presumably interrogated. Later that morning or on the following morning, Ambrose was transported to the county jail at Cape May Court House. At seven or seven-thirty o'clock on the morning of January 11th, 1936, the county physician was summoned to the jail and found Ambrose then dead. In his opinion Ambrose had then been dead six or seven hours.

It, therefore, seems credibly established that Ambrose died during the night of January 10th, 1936, or at a very early hour on January 11th, 1936. In the present case, no significance is sought to be ascribed to the circumstance that Ambrose probably committed suicide.

The evidence is barren of any suggestion that Ambrose had any knowledge or notice that his employer had terminated his employment. It is determined that he had no such knowledge or notice. On January 13th, 1936, however, his widow, the plaintiff, received a letter on the stationery of the McCahan Company and enclosed in an envelope post-marked Philadelphia, January 11th, 1936, one-thirty P. M. The letter is addressed to Salome Ambrose and is dated January 11th, 1936. The body of this letter is here reproduced: "Dear

Madam: We regret that the unfortunate circumstances in connection with your husband to have to notify you that we have this day canceled all insurance on our Group Insurance plan in which you were beneficiary.

"If everything turns out satisfactorily the insurance company will, if we re-employ him, permit him again renew his insurance in their Group Insurance plan. We extend our sympathy to you in this your hour of trouble and hope that the case will be settled satisfactorily to all." The sympathetic tone of this communication and the fact that it was addressed to Mrs. Ambrose and not to the employe, almost arouses the suspicion that the author already knew that Mr. Ambrose had died.

However, the evidence does not identify the person who caused this letter to be written and hence the authority of such individual to act for the McCahan Company in such a matter is not exhibited. Mr. Escandel, whose name appears to be subscribed to the letter asserted that he did not dictate or sign it. He acknowledged that he had no authority to discharge Ambrose. He had not received at that time any "slip" informing him that Ambrose had been dismissed from his employment. Amid all the surmises and conjectures, no one supposed the letter to have been written until after the opening of the executive offices of the company at nine o'clock on the morning of January 11th, 1936. Where, from the nature of the case, justice requires, the law will take into account fractions of a day. *Hartwell Lumber Co.* v. *U. S.* (*C. C.*), 128 *Fed. Rep.* 306; *Id.* (*C. C. A.*), 142 *Id.* 432; 26 *R. C. L.* 736 and cases cited.

The death of Ambrose fixes the time when his status is to be determined. Anything his employer may have thereafter done would be ineffectual in destroying any of the accrued rights of this plaintiff under the policy. What did the employer do? There is no evidence of any action taken before Ambrose's death by any authorized official or employe of the McCahan Company to terminate the employment. The "register" of the defendant was not produced. No one testified for the defendant concerning any notice received by it from the McCahan Company and when such notice was

received. It was said that the power to discharge such an employe reposed in the superintendent of the department in which the employe worked. The superintendent was not called as a witness.

In resisting the plaintiff's claim, the defendant has chosen to rely upon the contention that the circumstances disclosed by the evidence definitely indicate that the employment of Ambrose was terminated when he ceased work on the morning of January 7th, 1936. The circumstances do not warrant such a conclusion. Rather do they indicate that Ambrose was at the time permitted to absent himself temporarily from his station and that as a result of information subsequently acquired, the McCahan Company on the forenoon of January 11th, 1936, resolved to revoke his leave of absence and discharge him. Meanwhile Ambrose had died. The notion that an employer can grant a temporary leave of absence to an insured employe and then as a result of subsequent events and on a later date resolve to discharge the employe as of the date on which he was given the leave of absence, is positively discordant with a fair and reasonable construction of the policy. Such action on the part of an employer would be merely an ineffectual attempt to change the true status of the employe as it actually existed during the stated *interim*. The present case bears a perceptible resemblance to the case of *Ozanich* v. *Metropolitan Life Insurance Co. (Pa.)*, 180 *Atl. Rep.* 67.

Entertaining the conviction that in the present case no action was taken to discharge the insured employe prior to his death, it seems unnecessary to determine whether in view of all of the terms and provisions of the policy the discharge of an employe by his employer need be accompanied by notice thereof to the dismissed employe. The point has been discussed in the following cases: *Emerick* v. *Connecticut General Life Insurance Co. (Conn.)*, 179 *Atl. Rep.* 335; *Ozanich* v. *Metropolitan Life Insurance Co., supra; Perkins* v. *Eagle Lock Co.*, 118 *Conn.* 658; 174 *Atl. Rep.* 77; *Beecey* v. *Travelers' Insurance Co.*, 267 *Mass.* 135; 166 *N. E. Rep.* 571; *Coller* v. *Travelers' Insurance Co.*, 270 *Mass.* 424; 170 *N. E. Rep.* 407; *Magee* v. *Equitable Life Assurance Society*, 62

N. D. 614; 244 N. W. Rep. 518; 85 A. L. R. 1457; *Thull v. Equitable Life Assurance Society,* 40 *Ohio App.* 486; 178 N. E. Rep. 850. It is concluded as matters of fact that Ambrose was in the employ of the McCahan Company on January 7th, 1936, and was not thereafter discharged; that he never had notice or knowledge of the termination of his employment; that he was still in the employ of the McCahan Company within the intent and meaning of the policy at the time of his death.

A *postea,* in appropriate form and in conformity with the conclusions here expressed, will be signed.