Cecile A. GEIST, Plaintiff,

v.

**NATIONAL BELLAS HESS, INC.** and the National Bellas Hess Life Insurance Company, Defendants.

No. 64–C–712.

United States District Court
E. D. New York.

May 24, 1965.

Benjamin, Galton, Robbins & Flato, New York City, for defendants, by Louis Flato, New York City, of counsel for the motion and in opposition to the cross-motion.

Geist, Netter & Marks, New York City, for plaintiff, by George E. Netter, New York City, of counsel in opposition to the motion and for the cross-motion.

RAYFIEL, District Judge.

This is an action by Cecile A. Geist, the widow of A. Joseph Geist, and the named beneficiary of a certificate of group life insurance issued to him by the defendant National Bellas Hess Life Insurance Company (the Insurance Company) as an "employee" of the defendant National Bellas Hess, Inc., (National) to recover the sum of $25,000, the face amount thereof. The action was commenced in the Supreme Court of the State of New York, County of Queens, and was removed to this Court pursuant to Section 1441 of Title 28, U.S. Code, since both defendants are corporations foreign to New York and have their principal offices in Missouri. The defendants have moved under Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint and the plaintiff, by cross-motion, has moved for summary judgment in the amount demanded in the complaint.

The papers submitted herein reveal the following facts:

A. Joseph Geist, a prominent attorney in the City of New York, was for many years prior to November, 1962, a director of National. He had regularly been elected a member of its Board of Directors at its annual meetings. National conducts a large mail order business and is a publicly owned corporation whose shares are listed and traded on the American Stock Exchange. It is a Delaware Corporation and maintains its principal place of business in North Kansas City, Missouri. It owns all of the shares of stock of the Insurance Company, a Missouri Corporation, licensed therein to conduct a general life insurance business.

In 1954 National obtained from the Insurance Company a group life insurance policy for the benefit of its employees under the terms of which all of its full-time ledger employees and those of its affiliates were eligible to apply for and receive life insurance in accordance with the schedule set forth in the policy, the premiums for which were to be paid by National, for which it was to be partially reimbursed by the covered employees. In 1960 the said group policy was amended to provide that any member of the Board of Directors of National was eligible, as an "employee", to apply for and receive life insurance in the sum of $25,000.

In 1960 Mr. Geist, being eligible as a Director, applied for and received insurance on his life in the sum of $25,000, effective May 1, 1960, under the aforementioned group policy, which was evidenced by a certificate issued to him. His wife, the plaintiff herein, was named as beneficiary. At that time Mr. Geist was seventy-four years of age. The first annual premium for his insurance, $2,-217.75, was paid by National, to which he contributed $150. National paid his premium of $2,401.75 for the next year and $2,601.75 for the following year, Geist in each case reimbursing National to the extent of $150, as he was required to do under the terms of the policy. In

each of these years National billed Mr. Geist for his contribution when due.

For some time prior to the annual meeting of stockholders held on November 21, 1961 Mr. Geist had been ill. Nevertheless he was then re-elected as a member of an eleven member Board of Directors. His illness continued and as a result thereof he was unable to attend any of the meetings of the Board of Directors during the ensuing year. By reason of such illness and his resultant failure to attend any of the meetings of the Board, the management of National decided that it would not recommend Mr. Geist's re-election as a Director at the expiration of his term in November, 1962. However, because of his many years of valuable service as a Director, the Board decided to designate him as an "Honorary Member Emeritus of the Board of Directors" and "Consultant to the Board of Directors" for the following year, and to designate his law firm as "Consultant to General Counsel of the Company". Mr. Geist was informed of the Board's decision by a letter from the General Counsel dated August 22, 1962, to which he replied on August 30, 1962. A resolution embodying these proposals was passed by the Board of Directors on September 21, 1962 and a certified copy thereof was sent to Mr. Geist by General Counsel with a letter dated September 25, 1962. He acknowledged receipt thereof by letter to General Counsel on October 11, 1962.

The annual meeting of the stockholders of National was held on November 20, 1962. Prior to the meeting the Board of Directors, acting pursuant to authority vested in it by National's certificate of incorporation and by-laws, reduced its membership to nine. Gilbert H. Perkins, then a member of the Board, resigned, and Mr. Geist was not re-elected. Thereafter National notified the Insurance Company that he was no longer a Director, and, hence, was no longer eligible for insurance coverage. This action was taken because the group policy contained a provision to the effect that insurance thereunder was to terminate thirty-one days after the date of termination of the

employment of the insured, except in the case of absence from work due to illness, injury or retirement on pension, and Mr. Geist had not exercised the right of conversion contained in the said group policy, which provided that an employee, within 31 days after the termination of his employment, and without evidence of insurability, could convert his certificate of insurance into an individual policy upon the payment of the premium applicable thereto. On January 17, 1963 the Insurance Company terminated his coverage and, accordingly, National did not pay the premium which would have become due on May 1, 1963, and did not bill him for the sum of $150.00, the amount of his contribution thereto.

On August 11, 1963 Mr. Geist died and the plaintiff claimed payment of the sum of $25,000 under the policy. When the Insurance Company rejected the claim this action was commenced.

The plaintiff bases her claim on the following grounds:

1. That at the time of his death Mr. Geist was a member of the Board of Directors of National within the meaning of the group life insurance policy by reason of the resolution adopted by the Board designating him "as Honorary Member Emeritus of the Board of Directors" and that the purported cancellation of his life insurance was improper and invalid.

2. That his designation as an "Honorary Member Emeritus" was not a final and definitive termination of his "employment" as a Director, but was merely a temporary change in a continuing relationship whereby National would be assured of his services, and, consequently, he was entitled to notice of the claimed cancellation of his certificate of insurance and an opportunity to convert the policy.

3. That the policy of insurance, his certificate thereunder, and the resolution of the Board must be construed against the defendants if there is an ambiguity.

4. That the defendants are estopped from denying that Mr. Geist continued to be insured since they had advised him that he was "an Honorary Member Emeritus" of the Board of National, that he would be welcome to attend its meetings, and that the company would thus be assured of "the continued availability" of his "knowledge, experience, judgment and ability."

I find no merit in any of those contentions. As to the first, Mr. Geist was not a member of National's Board on August 11, 1963, the date of his death. Under its by-laws he could be a member thereof only by being *elected* as such at the annual meeting of stockholders, and at such meeting, which was held on November 20, 1962, he was neither re-elected nor re-nominated. Mr. Geist *knew* that he was not to be re-nominated and re-elected at the meeting for he had been so advised by a letter from National's General Counsel, dated August 22, 1962, which contains the following language:

"As I know you will recognize, and reluctant as we all are to accept it, your enforced protracted absence, in view of the *fiduciary nature of a Director's duties*, prohibits your renomination for the forthcoming year." (Emphasis mine).

Continuing, the letter stated:

"*Although you will not be re-nominated as a Director on* next year's slate, a resolution will be presented to the Board naming you as an Honorary Director Emeritus. *Although you will have no vote or directorial responsibilities*, you will be welcome at meetings of the Board. * * *" (Emphasis mine).

His reply to that letter indicates clearly that he understood the effect of the decision, for it contains this statement:

"Thus, the suggestions which you make now, I presume in behalf of yourself and all the other members of the Board, are sincere and based upon my ultimate *return to active duty as a member of the Board. Meanwhile, I accept the suggestions that you make and am overwhelmed to be the object of the resolution that will be adopted naming me as Honor-*

*ary Director Emeritus, and also a consultant in legal and business matters* in behalf of the Board. * * * " (Emphasis supplied).

He then iterated, "*Your suggestions meet with my wholehearted and unconditional approval.*" (Emphasis mine).

In his letter of October 11, 1962, addressed to the General Counsel, acknowledging receipt of the certified copy of the Board's resolution naming him as Honorary Director Emeritus, he said, "I feel deeply indebted to you because of the manner in which you executed *this rather delicate action.*" and then went on to say "I realize this involved much thought and action on your part, which I thoroughly appreciate and for which I am deeply grateful to you personally." (Emphasis mine).

In the light of the foregoing it is inconceivable that a lawyer of Mr. Geist's vast experience could have believed that he continued to be a Director of National after the meeting of November 20, 1962. He was cognizant of the fact that by reason of his physical condition he could not carry out his duties as a Director, for he said in his letter to the General Counsel, dated August 30, 1962,

"As you have been informed, fortunately I am making progress physically. It is a slow one, but I hope it will eventually come to pass that I will be able to resume my normal activities. *How long this will take I do not know* but my physician is steadfast in his belief that I will reach normalcy physically in a reasonably short time." (Emphasis mine).

Doubtless he was conversant with the legal principle that "Substantially all business corporation laws provide that the directors of a business corporation shall be elected at annual or other frequent intervals by the shareholders." See Baker and Cary's Cases and Materials on Corporations, Chapter 4, Section 1, page 93, and he must have known that the by-laws of National required that Directors be *elected by the stockholders* at the annual meeting, since he had

been elected a director in this manner for some thirty years.

I am certain, also, that he was familiar with his obligations as a Director, which, as set forth in Hornstein's Corporation Law and Practice, Volume 1, Section 431, page 527, follow:

"Directors are expected to act as a body, but each individual has definite responsibilities. He is required to be honest and act in good faith; he is also expected to be diligent. This last responsibility too often is overlooked by individuals, not by the courts. *A figurehead Director is not tolerated in this country. One who accepts the responsibility must attend meetings and vote;* and he must also keep himself sufficiently informed concerning the corporation's affairs to raise questions concerning matters which should be considered by Directors, even if they have not been brought before the meeting." (Emphasis mine).

Mr. Geist knew that he had not been re-nominated and re-elected as a Director because he had been unable to attend meetings of the Board for more than a year by reason of ill health, and that it was then impossible to ascertain when, if ever, he could attend.

The second ground urged by the plaintiff, namely, that Mr. Geist was entitled to notice of the cancellation of his insurance and an opportunity to convert the same because "the arrangement by which Mr. Geist was an Honorary Member Emeritus of the Board of Directors was not a final or definitive severance of the relationship, but only a temporary change in a continuing relationship by which the corporation was assured of Mr. Geist's services," is evidently based on the group policy's provision that "In case of the absence of an Employee from active work on account of sickness or injury, or on account of retirement on pension or for not longer than two (2) months on account of leave of absence or temporary lay-off, the employment of such Employee may, for the purposes of this Policy, be deemed to continue until terminated by

the Employer. The insurance hereunder on such Employee shall cease thirty-one (31) days after the date of such termination by the Employer, as evidenced to the Company by the Employer, whether by notification or by cessation of premium payment on account of the insurance hereunder of such Employee."

That provision in the policy, in my opinion, is not applicable to Mr. Geist since his "employment" as a Director terminated when he was not re-nominated or re-elected at the annual stockholders' meeting held on November 20, 1962. This was *not* "a continuing relationship", as the plaintiff contends. Mr. Geist's term as a Director ended, as did his eligibility for coverage under the group policy, pursuant to whose terms he then had thirty-one days to convert his certificate into an individual policy.

Nor is there merit in the third ground urged by the plaintiff. There is no ambiguity either in the insurance policy or in the designation of Mr. Geist as an "Honorary Director Emeritus." Webster's New International Dictionary, Second Edition, Unabridged, defines "Honorary" as:

"1. Done or conferred as a sign of honor; as, *Honorary* services; an *Honorary* degree.

"2. Designating a title or place which is held without rendering service or without receiving the emoluments or privileges usual to it; also holding such a title or place; as an *Honorary* member of a society."

It defines "Emeritus" as,

"Retired from office or active duty on account of age, infirmity, or long and faithful service, and honored with a non-official position and title corresponding to those held in active service."

Those definitions described precisely Mr. Geist's status as an "Honorary Member Emeritus of the Board of Directors." He was being honored with a "non-official position and title corresponding to those held (by him) in active service" and "a title or place * * * held without rendering service or without receiving the' emoluments or privileges usual to it." His appointment as such was a gracious gesture on the part of his colleagues on the Board. Plaintiff's contention that the defendants are estopped from denying that Mr. Geist continued to be a member of National's Board of Directors despite the events of November 20, 1962 is, for reasons hereinabove stated, likewise without merit.

Accordingly the defendants' motion for summary judgment is granted and the plaintiff's motion is denied. Settle order on notice.