121 N.J. Super. 185 (1972)
296 A.2d 352
RUBY WELLS, INDIVIDUALLY, AND AS ADMINISTRATRIX OF THE ESTATE OF GEORGE A. WELLS, DECEASED, PLAINTIFF,
v.
WILBUR B. DRIVER COMPANY AND THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 24, 1972.
*189 Mr. William L. Brach, for Plaintiff (Messrs. Brach, Eichler, Rosenberg and Silver, attorneys; Alan B. Hammer, South Orange, on the brief).
Mr. William T. Sutphin, appeared for defendants (Messrs. Stryker, Tams & Dill, attorneys).
HANDLER, J.S.C.
This is an action by a beneficiary on a group life insurance policy issued by defendant Prudential Insurance Company of America (hereinafter "Prudential") to defendant Wilbur B. Driver Company (hereinafter "Driver") for the benefit of Driver's employees. Plaintiff is the widow of George A. Wells, who had been an employee of Driver and an insured under the policy. The parties have moved for summary judgment.
Wells had been employed by Driver since 1947. He stopped working on April 30, 1969 due to neoplasm of the colon and received disability payments for six months thereafter. On November 10, 1969 Driver's personnel director and his assistant held a meeting with Wells and his wife during which there was a discussion of Wells' employment status. As a result Wells subsequently ceased working. He died on February 12, 1970 and Prudential paid plaintiff, as Wells' beneficiary, $5,043.15 on April 15, 1970, which amount defendants contend represented the full amount of death benefits due under the group policy. Plaintiff asserts that she was entitled to insurance coverage in the amount of $18,300 and now claims the difference.
The Group Policy No. G-8489 herein was a noncontributory plan which provided life insurance coverage for each employee of Driver based upon the employee's compensation. Upon the death of an employee while insured the amount of insurance which would be payable was that set forth in a certificate issued to each insured employee periodically. Upon the attainment of age 65 or retirement the policy provided that the amount of an employee's life insurance was $5,000. Upon the termination of employment there was also provided a right to convert all or a portion of the insurance to an individual policy without additional evidence of insurability. *190 The employer under the contract was responsible for the administration of various phases of the insurance policy, including maintenance of records concerning the particulars of each employee's insurance, the furnishing of periodic reports to Prudential indicating new employees, changes in amounts of insurance and terminations of insurance.
The insurance documents must be assessed within a statutory frame. N.J.S.A. 17:34-32 states that
No policy of group life insurance shall be delivered in this State unless it contains in substance the following provisions, * * * (9) [a] provision that if the insurance, or any portion of it, on a person covered under the policy ceases because of termination of employment * * * such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance * * * provided application for the individual policy shall be made, and the first premium paid to the insurer, within thirty-one days after such termination * * *.
Now N.J.S.A. 17B:27-19.[*] The group policy was faithful to this statutory directive. In the section entitled "Conversion Privilege" it provided that
If employment with the Employer is terminated, the Employee insured hereunder shall be entitled to convert all or part of his insurance, without evidence of insurability, to an individual policy of life insurance, provided written application and the first premium payment are made to the Insurance Company within thirty-one days from the date of termination of employment * * *.
The statute does not further explicate what acts or circumstances constitute a "termination of employment" sufficient to trigger the conversion privilege accorded by N.J.S.A. 17:34-32(9). The policy itself, however, states specifically that
*191 * * * Termination of employment shall for all purposes of the Policy, be deemed to occur upon cessation of active full-time work * * * except that an Employee who is * * * retired will nevertheless be considered as still employed on a full-time basis until the Employer, acting in accordance with rules precluding individual selection, terminates the Employee's insurance by notifying the Insurance Company to that effect or by discontinuing premium payments for his insurance * * *.
Issue is joined initially on whether there was such a termination of employment.
It is not unusual that a group insurance policy provide that termination of employment shall end an employee's insurance coverage. Mau v. Union Labor Life Ins. Co., 31 N.J. Super. 362 (App. Div. 1954); Keane v. Aetna Life Ins. Co., 22 N.J. Super. 296 (App. Div. 1952); Shaffer v. Metropolitan Life Ins. Co., 133 N.J.L. 53 (Sup. Ct. 1945). But it must be "such a termination of the relationship of employer and employee as will make applicable and effective all parts of the insurance contract." Ambrose v. Metropolitan Life Ins. Co., 18 N.J. Misc. 42, 43, 10 A.2d 479, 480 (Sup. Ct. 1939). A retired employee is one who has voluntarily withdrawn from employment and has ended his regular activity by arrangement with the employer. Jacobs v. N.J. State Highway Authority, 54 N.J. 393 (1969); Watson v. Brower, 24 N.J. 210 (1957). Consequently, retirement is a termination of employment within the meaning of a "termination of employment" clause in a group insurance policy. See Geist v. National Bellas Hess, Inc., 241 F. Supp. 209, 212-213 (E.D.N.Y. 1965); Young v. Minton, 49 Ga. App. 545, 176 S.E. 662 (Ct. App. 1934).
There was a meeting on November 10, 1969, between Driver's representatives and Wells, the subject of which was his retirement; a written request by Wells for payment from the Driver's Employee's Security Plan was sent on the same date and there was a notation thereon to the effect that retirement was as of November 28, 1969; his retirement was also noted in the 1969 Christmas issue of Driver's publication. There was also correspondence from Driver's director of *192 personnel to the administrator of group insurance and Driver's manager that Wells would retire December 1, 1969 and his last day on the payroll would be November 28, 1969. Thereafter Wells received wage security benefits, sabbatical payments and a pension payment, the last of which was on or about January 9, 1970. These events can be assimilated only upon the rationale that Wells had retired from Driver.
A termination of insurance in the context of this case requires a coalescence of two events. There must, in the language of the policy, be a "cessation of active full-time work." Where such "cessation" is brought about through retirement there must also be either a notification by the employer to the insurer that the retired employee's insurance has been terminated or a discontinuance of premium payments for his insurance. Plaintiff contends that notwithstanding Wells' retirement, his insurance was not terminated because there was no subsequent notification of the termination of his insurance to the insurer or a discontinuance of premiums as required under the policy with respect to a retired employee.
Group insurance policies frequently provide that individual coverage shall terminate when the insurer is notified to that effect. Cf. Kowalski v. Travelers Ins. Co., 115 N.J. Super. 545 (Law Div. 1971); Novern v. John Hancock Mut. Life Ins. Co., 107 N.J. Super. 570 (Law Div. 1969); Keane v. Aetna Life Ins. Co., supra; cf. Passkowski v. Prudential Ins. Co. of America, 182 F. Supp. 819 (D. Conn. 1960). The facts herein are that a report dated December 1, 1969 was sent to Prudential by Driver on December 10, 1969, which showed the amounts of group insurance added and terminated on that date. While there was no specification in the report of the names of the employees involved and no breakdown regarding the amounts of such individual changes, the records of Driver disclosed that the terminations included the subtraction of Wells' insurance by $13,300. This was the difference between $18,300, the face amount on Wells' insurance certificate, and $5,000, which would be payable with respect *193 to a retired insured. The premiums which were paid to Prudential based on this report did not therefore include a premium for Wells' insurance over and above $5,000. This report sent on December 10, 1969 is sufficient to evidence a discontinuance of premiums attributed to Wells' insurance coverage. It follows that Wells having retired, there was a termination of insurance, at least according to the explicit terms of the group insurance policy. What remains shrouded, however, is the exact date upon which each of these critical events occurred. The implications of this ambiguity are explored infra.
Upon the hypothesis that there was a termination of employment and insurance, the succeeding issue is whether there was a continuation of full insurance for some period of time inclusive of decedent's death on February 12, 1970. Defendants contend that there was no "pro rata right of conversion upon a decrease of coverage." Because Wells remained insured after retirement in the amount of $5,000 there could be no continuation of insurance since he would have no right to convert from group to individual insurance.
The policy provides, as emphasized by defendants, that "Any individual policy issued under [the conversion privilege] * * * shall be in place of all benefits under this policy." (Emphasis added). But as previously noted, the conversion privilege clause of the policy also provides that "If employment * * * is terminated, an Employee insured hereunder shall be entitled to convert all or part of his insurance * * * to an individual policy." (Emphasis added). The parent statutory provision cited earlier similarly requires that a group insurance policy must contain "[a] provision that if the insurance, or any portion of it, * * * ceases because of termination of employment * * * such person shall be entitled to have issued to him by the insurer * * * an individual policy of life insurance * * *." N.J.S.A. 17:34-32(9). (Emphasis added). Significantly, this provision goes on to state, "and provided further that *194 (b) the individual policy shall be in an amount not in excess of the amount of life insurance which ceases because of such termination * * *." It is evident from the terms of the policy and the applicable statute that upon a reduction of a portion of Wells' insurance in the amount of $13,300 following his retirement, he became entitled to convert all or a part thereof to an individual policy of life insurance.
Wells did not exercise this privilege to convert. But, as urged by plaintiff, the full amount of insurance was nevertheless payable as a death claim because the decedent did not receive any actual notice that this privilege to convert had ripened into existence, as contemplated by N.J.S.A. 17:34-32.2 (now N.J.S.A. 17B:27-24). The insurance policy provides:
* * * If, * * * however, the Employee is entitled by the terms of this policy to convert all or part of his insurance to an individual policy but dies during the thirty-one day period following termination of insurance, the amount of insurance which might otherwise have been converted will be paid as a claim under this Policy, whether or not application for conversion has been made."
This clause is directly responsive to the statutory mandate that a group insurance policy contain
A provision that if a person insured under the group policy dies during the period within which he would have been entitled to have an individual policy issue to him * * * and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy whether or not application for the individual policy or the payment of the first premium therefor has been made. [N.J.S.A. 17:34-32(11), now N.J.S.A. 17B:27-21]
Plaintiff contends that full insurance coverage was extended by N.J.S.A. 17:34-32.2 beyond this initial 31-day conversion period for an additional 60 days, or a total of 91 *195 days from the termination of insurance; this would be inclusive of the date of the decedent's death on February 12, 1970.
N.J.S.A. 17:34-32.2 provides:
If any individual insured under a group life insurance policy hereafter delivered in this State becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to the making of application and payment of the first premium within the period specified in such policy, and if such individual is not given notice of the existence of such right at least fifteen days prior to the expiration date of such period, then the individual shall have an additional period within which to exercise such right; but nothing herein shall be construed to continue any insurance under the policy beyond the period provided in the policy. Such additional period shall expire fifteen days next after the individual is given such notice, but in no event shall such additional period extend beyond sixty days next after the expiration date of the period provided in such policy. Written notice presented to the individual, or mailed by the policyholder to the last known address of the individual, or mailed by the insurer to the last known address of the individual as furnished by the policyholder, shall constitute notice for the purpose hereof.
Historically it has been recognized that the conversion privilege in a group insurance policy does not ordinarily provide an extension or continuation of full insurance coverage coterminous with the option to convert. E.g., Juhl v. John Hancock Mut. Life Ins. Co., 107 Cal. App 2d 188, 236 P.2d 628, 629 (D. Ct. App. 1951). See Aetna Life Ins. Co. v. Catchings, 75 F.2d 628, 629 (5 Cir.1935); Couch on Insurance 2d, § 82.93 at 1049 (1968); Annotation, "Termination or change in employment as affecting group insurance," 50 A.L.R. 1286 (1927). The first New Jersey statute which compelled the inclusion of a conversion clause in group life insurance policies was passed in 1927. L. 1927, c. 53, provided for the issuance of an individual policy in place of group insurance coverage within 31 days after termination of employment, provided an application was made and the premium paid. There was no provision for a continuation of insurance in the interim. This was *196 remedied by a 1935 amendment, L. 1935, c. 82, which extended insurance coverage under the group policy during the 31-day period from the date of termination of employment. This provision was clarified by L. 1938, c. 255, and L. 1942, c. 86.
In providing for continued insurance coverage following termination of employment the Legislature, in N.J.S.A. 17:34-32(9) and (11), used distinctive terminology  to the effect that if death occurs during the 31-day conversion period, the amount of life insurance which the person insured would have been entitled to convert "shall be payable as a claim * * *." This provision was set forth in section 2 of L. 1950, c. 301. In contrast is the language of N.J.S.A. 17:34-32.2, which was enacted as section 3 of L. 1950, c. 301. This provided, in effect, that if such an individual insured was not notified of the existence of his right to convert at least 15 days before the end to the 31-day conversion period, "then the individual shall have an additional period within which to exercise such right * * *." There is no provision in N.J.S.A. 17:34-32.2 for a continuation of full coverage under the group insurance policy during the extension of the conversion privilege period as provided therein. Indeed, this is explicitly countermanded: "* * * nothing herein shall be construed to continue any insurance under the policy beyond the period provided in the policy." The period provided in the policy (and in the statute, N.J.S.A. 17:34-32(9)) is the 31-day period following employment termination. It is this 31-day period which delimits the continuation of insurance coverage payable as a death benefit under N.J.S.A. 17:34-32(11).
The New York courts have reached a seemingly different result. E.g., Payne v. Equitable Life Assur. Soc. of United States, 14 A.D.2d 266, 220 N.Y.S.2d 493 (App. Div. 1961), aff'd 11 N.Y.2d 1006, 229 N.Y.S.2d 752, 183 N.E.2d 763 (Ct. App. 1961). In De Ville v. Continental Assurance Co., 10 A.D.2d 386, 199 N.Y.S.2d 876 (App. Div. 1960), aff'd 8 N.Y.2d 1080, 207 N.Y.S.2d 453, *197 170 N.E.2d 457 (Ct. App. 1960), an insured had died 43 days after his group insurance coverage was terminated. The court noted that an insured had a conversion right for 31 days following termination of employment, and that full coverage continued during this time. The court held that under the applicable insurance code the failure of the insurer to notify the insured of his eligibility to convert to an individual policy during this time served to extend the insurance coverage for an additional period of 90 days. Significantly, the New York statute did not contain a stricture comparable to that included in N.J.S.A. 17:34-32.2, i.e., that the statutory extension of the period within which to exercise the conversion privilege shall not be construed to continue the insurance coverage beyond the period of the extended coverage which is provided in the insurance policy itself. Moreover, the policy of insurance considered in the De Ville case did not by its own terms limit the continuation of full insurance coverage to 31 days following insurance termination. This is in contrast to the policy herein which does delimit the period of extended coverage to 31 days.
Plaintiff also bases her claim upon the certificate apart from the insurance policy. It has been recognized that an insurance certificate does not of itself create any contractual relationship between the employee and the insurer. Kloidt v. Metropolitan Life Ins. Co., 18 N.J. Misc. 661, 16 A.2d 274 (Sup. Ct. 1939). Ordinarily an insured holding a certificate of insurance is held to have constructive knowledge of the group insurance policy. 13 Appleman Insurance Law & Practice, § 7530 at 274 (1943); 19 Couch on Insurance 2d, § 82.13 at 987 (1968). In this vein defendants emphasize the clause in the certificate that
The provisions of the Group Policy principally affecting the Employee's insurance are described on this and the following pages of this certificate. All benefits described herein are governed by and are subject in every respect to the Group Policy which alone constitutes the agreement under which payments are made. *198 Nevertheless, in a particular context a certificate issued pursuant to a group insurance policy may, together with the policy itself, constitute the contract between the parties. Metropolitan Life Ins. Co. v. Poliakoff, 123 N.J. Eq. 524 (Ch. 1938). Moreover, the certificate herein is not a mere memorial of the insurance contract. It is a document required to be issued by statutory directive. Every group life insurance policy issued in New Jersey must contain
A provision "that the insurer will issue to the policyholder for delivery to each person insured a [individual] certificate setting forth a statement as to the insurance protection to which he is entitled, to whom the insurance benefits are payable, and the rights and conditions set forth in (9), (10) and (11) following. [N.J.S.A. 17:34-32(8), now N.J.S.A. 17B:27-18]
Insurance contracts have been characterized as adhesion contracts whose terms often are unintelligible to the insured. Harr v. Allstate Ins. Co., 54 N.J. 287 (1969); Allen v. Metropolitan Life Ins. Co., 44 N.J. 294 (1965). Insurance companies have a duty to make policy provisions plain and prominent, especially those relating to coverage. Harr v. Allstate Ins. Co., supra. With respect to a certificate of group insurance this obligation to be clear is crystalized in N.J.S.A. 17:34-32(8). Correlatively, the clauses in an insurance policy should be given their ordinary and usual meaning; if there is no ambiguity, a strained or distorted construction will not be indulged. Jorgenson v. Metropolitan Life Ins. Co., 136 N.J.L. 148 (Sup. Ct. 1947). Moreover, when the contract is clear, the court is bound to enforce its terms as they are written, James v. Federal Ins. Co., 5 N.J. 21 (1950); Atlantic Casualty Ins. Co. v. Interstate Ins. Co., 28 N.J. Super. 81 (App. Div. 1953); it may not make a better contract for either of the parties, Kampf v. Franklin Life Ins. Co., 33 N.J. 36 (1960); Rotwein v. General Accident Group and Cas. Co., 103 N.J. Super. 406 (Law Div. 1968).
*199 The certificate herein designated the amount of insurance at $18,300. It further provided that "[i]f the Employee dies while insured under the Group Policy, the amount of insurance then in force on the life of the Employee will be paid to the beneficiary." This indicates with reasonable clarity the amount of insurance payable as a death benefit if insurance was in effect at the time of an insured's death. The certificate, as required by N.J.S.A. 17:34-32(8), also fairly and accurately summarizes the rights and conditions with respect to the termination of insurance, the elements of the conversion right and the continuation of insurance during the 31-day conversion period. By necessary implication these clauses indicate that if there were such a termination of insurance and a failure to convert, there would be a loss or a dimunition of insurance payable upon the subsequent death of the insured after the expiration of the conversion period. True, the certificate does not state, as does the policy, the extent of this insurance drop, but the failure to specify the amount of reduction cannot in the context of this case be considered as so confusing or misleading to an insured as to induce the belief that there would be no loss of coverage whatsoever. To reach the result urged by plaintiff the certificate would have to be read as though the mandatory provisions pertaining to termination of insurance, the conversion privilege and the continuation of insurance after the expiration of the 31-day period were nonexistent.
Another and critical issue must be addressed in the context of this case  whether the failure to give a retired employee actual notice of the particular date when the termination of insurance is effective serves to continue full insurance coverage. It has been held that where insurance protection under a group insurance policy can be lost upon the termination of employment, there will be implied an obligation on the part of the employer to give actual or definite notice thereof to the insured. In Walker v. Occidental Life Ins. Co., 67 Cal.2d 518, 63 Cal. Rptr. 45, 432 P.2d 741 (Sup. Ct. 1967) the court considered a group insurance policy *200 similar to the present one, and the California Insurance Code which contained a clause comparable to N.J.S.A. 17:34-32(9). It noted the position of a majority of jurisdictions holding
* * * under similar policy provisions, that the employee is entitled to receive notice that the employer has terminated their relationship. [Citations omitted.] The rationale of these decisions is that the privilege of converting the policy regardless of an employee's physical condition is a valuable property right, that it would be inequitable to hold that an employee may be deprived of this right without his knowledge at the whim of the employer, and that the inclusion of such a clause in the policy implies an intention that the employee should have knowledge of the precise date of termination of his employment. [63 Cal. Rptr. at 48. 432 P.2d at 744; emphasis added]
In following the majority rule, the court stated:
* * * It is evident that the privilege of converting a group policy to a policy of individual insurance within 31 days after termination of employment would be of dubious value if an employee was not entitled to be notified when the employer had effected a termination. * * * We therefore hold that notice of termination is essential in order to render viable the conversion privilege contained in the certificate issued by defendant. [Id., emphasis added]
It has also been recognized that there cannot be a loss or forfeiture of coverage where there is a failure to notify an insured of pivotal events. Mau v. Union Labor Life Ins. Co., supra; cf. Elmhorst v. Prudential Life Ins. Co. of America, 48 Haw. 121, 148, 395 P.2d 683 (1964). In Keane v. Aetna Life Ins. Co., supra, 22 N.J. Super. at 312, the court held that where there was "obscurity" as to whether the active work of an employee had been terminated, "a duty existed in the employer to spell out plainly the position it intended to take as to the continuance of the insurance."
Here Wells received no actual notice as to the particular date upon which his retirement would be or had become effective. Wells obviously knew, following the conference on November 10, 1969 and his subsequent receipt of various payments and benefits thereafter, that his retirement had been *201 effectuated. But he was not advised as to any specific date that his retirement became effective so that he could estimate the accrual of the crucial period of time during which he would remain protected with continued insurance coverage and afforded an option to convert to an individual policy. Insofar as Driver did not notify Wells as to the actual date of the termination of his employment, this constituted a breach of its implied obligation. Its dereliction in this respect is shared vicariously by Prudential. "[E]mployment can be terminated only by notice given by the employer to the employee * * * [and] the insurer contracted to be bound by what transpired between the employer and employee." Keane v. Aetna Life Ins. Co., supra, 22 N.J. Super. at 305.
Assuming adequate notice of the termination date of employment, the court in Keane declined to consider the insurer liable on the policy for any failure to notify the insured of the actual termination of insurance. It stated that "[t]he insurer nowhere conditioned its obligation upon such notice and we cannot revise the contract to embody that obligation." (At 309). Similarly in this case there is no explicit contractual undertaking set forth in the policy that a retired employee receive notice that premiums for his insurance were not paid or that his insurance was otherwise discontinued in order for there to be a termination of insurance. Nevertheless, the policy and certificate herein provided that an employee who is retired will be considered "as still employed on a full time basis until the Employer, * * * terminates the Employee's insurance by notifying the Insurance Company to that effect or by discontinuing premium payments for his insurance." (Emphasis added). Thus, in this case an insured employee by the very terms of the group policy and certificate was entitled to consider himself as fully employed for insurance purposes despite his actual retirement unless and until certain acts were performed. If, by necessary implication, an employer is obligated to notify an insured of the termination of his employment, this would import a comparable duty to apprise a retired employee of the actual date upon *202 which there was a notification to the insurer or a discontinuance of premiums in order to conclude the employee's insurance coverage. It follows by a parity of reasoning that this implied obligation would fall within the pale of the insurer's contractual undertaking.
Wells received no notice at any time that as of a particular date his insurance would be terminated or decreased. There was a vague disclosure to the Wellses at the conference of November 10, 1969 that the insurance would be reduced to $5,000 following his retirement. This involved a discussion of future events. Subsequent retirement benefits received by Wells occurred on varying dates. Moreover, the last insurance certificate indicating the face amount of his insurance sent to Wells while he was alive was in the amount of $18,300. He was not privy to the interoffice reports of Driver or the report sent by Driver to Prudential in December 1969 which, at best, is merely an indicium of the discontinuance of premiums or a notification that Wells was then categorized as a retired employee. Without definite notice, knowledge could not be imputed to Wells that upon a particular date his group insurance terminated, that his right to convert to an individual policy had become activated, and that the limited period of time during which he would remain fully protected was running.
In conclusion, the failure of Driver to furnish the insured with actual and definite notice of the exact date of the termination of his employment through retirement, compounded by the further failure to notify the insured that Prudential had been so notified of his actual retirement or that premiums had been discontinued as of a particular date, served to continue Wells in the status of a fully employed employee for insurance purposes under the group insurance policy. As a consequence there was no effective termination of his insurance coverage or any portion thereof, and insurance in the amount of $18,300 was payable to Wells' beneficiary as a claim upon his death on February *203 12, 1970. Accordingly, summary judgment in favor of plaintiff against defendants is granted.
Plaintiff has moved for summary judgment with respect to count two of the complaint sounding in negligence; Prudential has cross-moved on this issue. Plaintiff contends that if there were a loss of insurance coverage under the terms of the group insurance contract by virtue of decedent's failure to exercise his privilege to convert, decedent had not been properly or carefully advised as to his insurance protection by Driver's representatives and this negligence occasioned the loss. Defendants urge that neither Driver nor Prudential owed an antecedent duty to Wells, the negligent discharge of which can give rise to liability in tort.
An individual may not be obligated to perform a service for another, yet, upon his voluntary undertaking to act, may be found liable in tort for negligently performing or failing to perform the service gratuitously assumed, even in the absence of a contractual undertaking. Valdez v. Taylor Automobile Co., 129 Cal. App.2d 810, 278 P.2d 91 (D. Ct. App. 1954); Prosser, Torts, § 32 at 190 (1941). The principle that a volunteer must act with due care recurs in all areas of the tort field. E.g., O'Neill v. Suburban Terrace Apartments, Inc., 110 N.J. Super. 541 (App. Div. 1970); Barbarisi v. Caruso, 47 N.J. Super. 125 (App. Div. 1945); Freddi-Gail, Inc. v. Royal Holding Corp., 45 N.J. Super. 471 (App. Div. 1957); La Brasca v. Hinchman, 81 N.J.L. 367 (Sup. Ct. 1911); Restatement, Torts 2d, § 324 at 139 (1965); Restatement, Agency, 2d, § 378 at 175 (1958); Seavey, "Reliance upon Gratuitous Promises or Other Conduct," 64 Harv. L. Rev. 913 (1951).
In the present case a triable issue of fact endures with respect to whether, by virtue of any express contractual undertakings, including the employer-employee relationship or because of a course of dealing with its employees, Driver owed Wells, as its employee, a duty to give adequate advice concerning his options upon retirement including his insurance *204 protection. Such an issue at trial would involve an elucidation of the duties of Driver's personnel officers vis-a-vis employees, the administration of the group insurance policies, the purpose and nature of the meeting with the Wellses on November 10, 1969, and the extent to which the Wellses relied upon the superior knowledge of Driver's representatives. A trier of fact might well conclude that there was a duty on the part of Driver to guide Wells through the maze of his retirement and insurance options, or that there was a voluntary undertaking sufficient to posit such a duty on the part of Driver. That being so, the employer was bound to exercise reasonable care in the discharge of that duty, and liability would attach if it were determined that reasonable care was not exercised and Wells suffered a loss of insurance as a proximate result thereby. This would be within the parameters of the common law doctrine that one who undertakes to perform an act and performs it negligently is liable for his malfeasance. Dudley v. Victor Lynn Lines, Inc., 48 N.J. Super. 457 (App. Div. 1958), rev'd on other grounds, 32 N.J. 479 (1960); La Brasca v. Hinchman, supra; cf. Stockmen's Nat. Bank of Casper v. Richardson, 45 Wyo. 306, 18 P.2d 635 (Sup. Ct. 1933); Carr v. Maine Central R. Co., 78 N.H. 502, 102 A. 532 (Sup. Ct. 1917). No such course of action, however, was undertaken by Prudential. Nor is there any factual or other basis to imply an antecedent duty owed by it to Wells. Moreover, the facts do not suggest that in advising Wells as to his status and rights as a retired employee, Driver through its representatives acted as the agent for Prudential.
Summary judgment in favor of Prudential with respect to plaintiff's complaint of negligence is granted. Summary judgment in favor of plaintiff against Driver on the issue of negligence is denied, there being genuine issues of material facts to be tried.
NOTES
[*] The statutory provisions applicable to this case have been repealed and superseded by L. 1971, c. 144; N.J.S.A. 17B:27-1 et seq., a revision of the insurance laws which became effective January 1, 1972. The superseding provisions are comparable to those sections which are germane to this litigation and will be noted accordingly.