Nova Lee FRANK, Appellee,

v.

SENTRY LIFE INSURANCE COM-
PANY, Appellant.

No. 46357.

Supreme Court of Oklahoma.

Sept. 17, 1974.

H. L. Heiple, Heiple Law Offices, Inc., Benjamin E. Stockwell, Stockwell & Pence, Norman, for appellee.

Elliott C. Fenton, Densil E. Sides, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellant.

IRWIN, Justice.

This is an action to recover under a group life insurance policy where the in-

sured-employee died after terminating his employment. Both parties filed motions for summary judgment. Judgment was rendered in favor of Appellee (plaintiff), the insured's surviving spouse. Appellant, the insurance carrier (defendant), appealed.

Lawton H. Frank (insured) was employed by Barbour and Short, Inc., and insured under defendant's group life insurance policy. On April 15th, in preparation for termination of his employment, the insured met with his employer and defendant's agent to discuss the options available to insured for converting the group policy to an individual policy. The insured terminated his employment on April 30th and died on June 27th, without having exercised any option for conversion.

The issue presented is the correctness of the trial court's judgment determining that plaintiff was entitled to benefits under the group policy.

Article 41 of the Insurance Code [36 O. S.1971 §§ 4101–4111] relates to Group Life Insurance and Group Annuity Contracts. Secs. 4103–4104 set forth certain provisions that group life insurance policies must contain. Although defendant's group policy does not follow verbatim the statutory language, it does contain the provisions required by statute that are pertinent here. Therefore, for clarification, we will determine the rights of the parties under the terms of the group policy as those rights are statutorily prescribed.

Sec. 4103(8) provides that if insurance on a person covered under a group life insurance policy ceases because of termination of employment, such person "shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance without disability or other supplementary benefits, provided an application for the individual policy shall be made, and the first premium paid to the insurer, within thirty-one (31) days after such termination, * * *."

Sec. 4103(10) provides that if a person insured under a group policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with § 4103(8), supra, and other provisions not here pertinent, "* * * and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made."

Since insured did not make application or pay the first premium for an individual policy within the thirty-one (31) days period following termination of employment, or at a subsequent time, we must determine whether coverage under the group policy continued beyond the thirty-one (31) day period.

36 O.S.1971, § 4104, relates to the right of an insured under a group policy to convert to an individual policy; notice of the right to convert; and time for exercising such right. It provides:

"If any individual insured under a group life insurance policy hereafter delivered in this state becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to making of application and payment of the first premium within the period specified in such policy, and if such individual is not given notice of the existence of such right at least fifteen (15) days prior to the expiration date of such period, then, in such event the individual shall have an additional period within which to exercise such right, but nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy. This additional period shall expire fifteen (15) days next after the individual is given such notice but in no event shall such additional period extend beyond sixty (60) days next after the expiration date of the period provided in such policy.

Written notice presented to the individual or mailed by the policyholder to the last known address of the individual or mailed by the insurer to the last known address of the individual as furnished by the policyholder shall constitute notice for the purpose of this paragraph."

In addition to the meeting with the insured on April 15th, to discuss the options available for conversion to an individual policy, at insured's request, the agent went to insured's home on May 18th, to renew discussion of the conversion options. Both times the agent discussed the conversion options with insured, he brought a copy of the conversion application and urged the insured to sign. No copies of the conversion application were left with the insured. On June 11th, defendant mailed written notice and a copy of the conversion application form to the insured who received them on June 14th. The insured died thirteen (13) days later on June 27th without making application for the individual policy or paying the first premium.

Defendant contends that the group coverage expired at the end of the thirty-one (31) day period following employment termination. Plaintiff contends that coverage under the group policy continued until the insured was given the opportunity to convert to an individual policy and the time for conversion had not expired at the time of his death.

The trial court found, inter alia, that:

" * * * the 31-day conversion period cannot 'run' until it 'starts', and it cannot start until an assured has actual unqualified and uninhibited opportunity to exercise it. Notice without opportunity to act is a due process nullity. The assured (decedent) could not convert until he filed the application form. He was entitled to 15 days to consider conversion. The period had to be uninterrupted. Defendant could not dangle the form before the assured, start the time clock running, then conceal the form so he could not act upon it. * * * defendant had to give decedent a reasonable time to exercise his conversion right without forcing him to lapse life coverage. * * *."

The trial court concluded that "decedent was without 'notice' until he was provided 'opportunity' to convert his group life to individual life coverage; that he first received such uninterrupted and unencumbered opportunity on or after June 14th, when he received and could at his leisure determine if he wanted to exercise his conversion option; that his interim group coverage continued, notwithstanding language of the policy or Oklahoma Statutes, until he had at least 15 consecutive uninterrupted days to exercise his conversion option; that death interrupted his conversion time, and consequently, his beneficiary (plaintiff) is entitled to claim under the group life provisions."

It is to be noted the trial court concluded the "interim group coverage continued, notwithstanding language of the policy or Oklahoma statutes." When this language is considered in connection with other language employed in the trial court's findings, we can not ascertain whether the trial court determined that under the group policy and statutes, coverage under the group policy continued until insured had fifteen days to convert after receiving written notice, or whether under the circumstances presented, coverage under the group policy continued until insured had fifteen days to convert after receiving such notice.

We will first consider insured's rights under the policy as prescribed by statute. Two types of policies are involved; i. e., group and individual policies. Sec. 4104, governs the time in which an insured under a group policy may convert to an individual policy without evidence of insurability, provided the insured makes application and pays the first premium for the individual policy. If an insurer does not give written notice to the insured of his conversion rights, the insured has sixty (60) days beyond the thirty-one (31) day period following employment termination to con-

vert without evidence of insurability by making application and paying the first premium. If the insurer does not give written notice of the conversion rights, the right to convert is not extended beyond the sixty (60) day period because written notice is not a prerequisite to the expiration of the sixty (60) day period.

■ Insurer may limit the conversion period to thirty-one (31) days following employment termination by giving written notice to the insured at least fifteen (15) days prior to the expiration of the thirty-one (31) day period. If written notice is not given within the thirty-one (31) day period, as in the case at bar, insurer may limit the sixty (60) day period to a fifteen (15) day period by giving written notice to the insured. Whether the period of conversion is governed by the sixty (60) day period where written notice is not given, or by the fifteen (15) day period where written notice is given, insured must make application and pay the first premium within the controlling period before he is entitled to the issuance of an individual policy. Since no application or payment of premium were made in the case at bar, plaintiff would not be entitled to recover under an individual policy.

This brings us to the trial court's findings and plaintiff's contention that after written notice of the right to convert was given, insured had fifteen (15) uninterupted days to convert and during that period insured had continued coverage under the group policy. Under this theory, if insurer does not give written notice, insured has continuous coverage under a group policy not only for the thirty-one (31) day period following employment termination but also an additional sixty (60) day period.

There is no language in § 4103, supra, which could be construed to mean that coverage under the group policy continues after the thirty-one (31) day period following employment termination. However, § 4104, speaks to this directly and specifically provides that "nothing herein contained shall be construed to continue any insur-

ance beyond the period provided in such policy." This language could only be directed to the thirty-one (31) day period following employment termination.

A New Jersey Court in Wells v. Wilbur B. Driver Company (1972), 121 N.J.Super. 185, 296 A.2d 352, construed statutes nearly word for word identical to the statutes under consideration. Although that court granted recovery under the terms of the group policy on the grounds that certain circumstances served to continue the insured-employee in the status of a fully-employed employee for insurance purposes under the group policy, that court did hold that the group insurance coverage was limited to the thirty-one (31) day period following employment termination. In reaching that decision the court recognized that the New York Courts had reached a seemingly different result but pointed out that the New York statutes did not contain a stricture contained in the New Jersey statutes [similar to § 4104 of our statutes], that "nothing herein shall be construed to continue any insurance under the policy beyond the period provided in the policy."

■ We hold that after the expiration of the thirty-one (31) day period following employment termination, insurance coverage under a group policy ceases.

■ Did insured have continued coverage under the group policy beyond the thirty-one (31) day period following employment termination under the circumstances? Plaintiff contends that an insurer who deliberately deprives an insured of the opportunity to discharge a condition precedent to the exercise of a conversion privilege, which privilege is a contractual right granted by the policy and statutes, is estopped from denying any grace period contemplated by the policy. The testimony relied upon to sustain this contention is that relating to the failure of defendant's agent to leave the conversion application with the insured.

In harmony with plaintiff's argument, the trial court seemed to be understandably concerned with the failure of defendant's

agent to leave copies of the conversion form with the insured. Nonetheless, the evidence does not indicate any effort or intent on the part of defendant or defendant's agent to deprive or prevent insured from making application by withholding appropriate forms or urging delay. The agent's uncontroverted testimony (by deposition) is that he tried on two different occasions before the group policy expired to get the insured to convert his policy.

Plaintiff testified (by deposition) that she and her husband had not made up their minds concerning the conversion policy because they wanted to discuss it with their attorney, were not sure what amounts of coverage to get, and "we, of course, were having a financial problem."

Plaintiff points to no evidence wherein defendant or its agent deliberately deprived the insured of his opportunity to exercise his right of conversion. Since coverage under the group policy expired prior to the death of insured, plaintiff is not entitled to recover in the case at bar.

Judgment reversed with directions to enter judgment for defendant.

All the Justices concur.