**Celeste M. CASTELLO, Plaintiff,**

v.

**Ron GAMACHE and Ralph Evans, III, Trustees for the Teamster Insurance and Welfare Fund, Local 688, International Brotherhood of Teamsters, Defendants.**

No. 78–0257C(2).

United States District Court,
E. D. Missouri, E. D.

Sept. 5, 1978.

Robert N. Feldmann, Gary A. Growe, Kramer, Chused, Strauss, Shostak & Kohn, St. Louis, Mo., for plaintiff.

Norman W. Armbruster, Clyde E. Craig, Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., for defendants.

## MEMORANDUM

WANGELIN, District Judge.

This action is before the Court upon a stipulated record for a decision on the merits. Plaintiff is the beneficiary of a group life insurance policy insuring Caroline Castello, deceased. Plaintiff brings this action to recover on the policy. The Court has jurisdiction pursuant to 29 U.S.C. §§ 186 and 1132. After fully considering the record, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

Plaintiff has been and is a resident of the City of St. Louis, Missouri.

Defendants Gamache and Evans are Trustees of Teamsters Local 688 Insurance and Welfare Fund (Fund), a common law trust. The principal office and place of business of the Fund is located within the Eastern District of Missouri.

The Fund exists for the purpose of providing life insurance and other benefits to eligible employees employed under collective bargaining agreements between Teamsters Local 688 and their employers. These collective bargaining agreements require the employers to make contributions to the Fund.

Caroline Castello was employed from June 7, 1969 to July 23, 1976 by Switzer Candy Company. She was temporarily laid off on the latter date. Switzer had a collective bargaining agreement with Local 688 which required Switzer to make contributions to the Fund on behalf of employees, including Caroline Castello while she was actively employed. Switzer did make the required contributions while Caroline Castello was employed.

Switzer is an employer and Teamsters Local 688 is a labor organization within the meaning of 29 U.S.C. § 186. The Fund is a qualified, jointly administered trust within the meaning of that same statute. The plan of benefits provided by the Fund for eligible employees was an employee welfare benefit plan and an employee benefit plan as defined by the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1002(1), (3).

The death benefits provided under the plan were in the form of a group life insurance policy underwritten by Occidental Life Insurance Company of California. After Caroline Castello ceased active employment on July 23, 1976, no premiums were paid either by the Fund or by Caroline Castello to Occidental on her behalf. Under the terms of the policy it expired thirty one (31) days after July 23, 1976.

An option to convert part or all of her life insurance policy, without medical examination, to a personal life insurance policy was provided as follows:

> *Conversion privilege.* When you are no longer eligible for the Life Insurance Benefits you may convert part or all of your Life Insurance coverage, without medical examination, to a personal Life Insurance policy.
>
> If the Life Insurance coverage ends for your group for any reason, you may convert up to $3,000 of your Life Insurance coverage to a personal policy, but only if you have been insured under this plan for at least three years.
>
> The personal policy may be of any type other than term insurance and without disability or accidental death benefits.

You must apply for the personal policy and pay the first premium within thirty one days after your Life Insurance coverage ends. Premiums for the personal policy will be determined at the time of conversion by your class of risk, the type and amount of insurance and your age. The personal policy will not become effective prior to the end of the thirty one day conversion period.

If you are not given written notice of your Conversion Privilege at least fifteen days before the end of the thirty one day conversion, it will be extended to the earlier of (1) twenty five days after the date notice is given, or (2) ninety one days after your Life Insurance coverage ends. Written notice may be presented to you or mailed to your last known address.

If you die within thirty one days after your life coverage ends, we will pay the amount that could have been converted.

Copies of the life insurance policy were generally distributed and made available to members of the bargaining unit represented by Local 688 at Switzer. They were also available at union meetings of Local 688, and at the offices of the Fund. Caroline Castello was not given notice by the Trustees of the Fund, either written or oral, apprising her that unless she took steps to convert her group life insurance policy into a personal life policy within the time limits set out by the policy that she would no longer have any benefits.

Caroline Castello died March 4, 1977. Plaintiff then made timely application for any death benefit. The claim was denied on the ground that the policy was not in effect at the time of death. Thereafter plaintiff made timely and proper appeal to defendants of this denial. A hearing was held and the appeal was rejected and the denial reaffirmed for the reasons that the policy had lapsed and Caroline Castello had failed to exercise her conversion option.

### Conclusions of Law

There is no question that defendants are required to administer the trust fund in a reasonable manner and for the sole and exclusive purpose of providing benefits to participants. Plaintiff argues that this standard, when viewed in light of the language of the policy contemplating notice, required defendants to inform Caroline Castello of her conversion rights.

In support of this theory plaintiff has cited cases which have required plan trustees to give notice of pension requirements to participants. *Norton v. I. A. M. National Pension Fund*, 180 U.S.App.D.C. 176, 553 F.2d 1352 (1977); *Burroughs v. Board of Trustees of Pension Trust Fund for Operating Engineers*, 542 F.2d 1128 (9th Cir. 1976). Plaintiff has also cited two cases which concern conversion options in group life insurance policies. *McGinnis v. Bankers Life Co.*, 39 A.D.2d 393, 334 N.Y.S.2d 270 (S.Ct. 1972); *Wells v. Wilbur B. Driver Co.*, 121 N.J.Super. 185, 296 A.2d 352 (1972). None of the above cases are particularly helpful. *Norton* and *Burroughs* involve changes in rules for qualifying for pensions. The plaintiffs in those actions were unable to comply with the rules at least in part because they had no notice of the changes. No such change in circumstances is present here.

*McGinnis* and *Wells* both involved a situation more closely analogous to this one. In those cases *employers* were held liable for failing to notify employees that their employment had terminated for purposes of their insurance policies. Both of these cases were based upon the theory that the right to convert is a valuable property right and an employee must know the precise date of his termination in order to take advantage of that right.

Although there are factual similarities, these cases are also distinguishable. In this action there is no allegation that plaintiff was unaware of her termination. Indeed, the party responsible for her lay off is not before the Court. Rather, plaintiff claims that she should have been told of the *existence* of the conversion clause. However, as stated in *Wells*, an insured is presumed to have constructive knowledge of the terms of a group policy. 296 A.2d at

358. Absent some direct command in the language of the trust agreement the Court will not imply a requirement that the trustees provide employees with that knowledge.

Accordingly, judgment will be entered for the defendants.