195 N.J. Super. 520 (1984)
480 A.2d 941
CAROLYN AND LAWRENCE BERRY, PLAINTIFFS-APPELLANTS,
v.
PLAYBOY ENTERPRISES, INC., AND PLAYBOY OF SUSSEX, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 17, 1984.
Decided August 15, 1984.
*521 Before Justice SULLIVAN, and Judges KING and BILDER.
John G. Simmonds, for appellants.
*522 Apruzzese & McDermott, for respondents (Charles F. Waskevich, Jr., on the brief).
The opinion of the court was delivered by KING, J.A.D.
This appeal presents the issue of whether an employer has a duty to explain with reasonable care an employee's options as to health and other supplemental benefits upon hiring. The appeal is taken from a summary judgment in favor of defendant Playboy Enterprises, Inc. The plaintiffs alleged that defendants' agents negligently misrepresented plaintiff Carolyn Berry's options for a health-benefit plan when she was hired as a cook at Playboy's Great Gorge Resort in Sussex County. Plaintiffs claim that as a result they suffered money damages because they were without family medical benefits for the first 90 days of Carolyn Berry's employment. Her husband, plaintiff Lawrence Berry, was injured during that period and was without medical insurance. We conclude that defendant had a duty to use reasonable care in explaining employment benefit options. Because the record before us seems to generate factual conflict, because the issue is somewhat novel[1] and because the parties' credibility is critical to the dispositive issue, we reverse and remand for a plenary hearing on the merits.
This is the factual background. Carolyn Berry was hired as a banquet cook by Playboy on March 4, 1981. At that time she signed this document called "Playboy Benefit Program Enrollment and Record Card":
*523 
From this card it is unclear whether dependent coverage was declined or accepted. The entry for "Dependent Coverage" is marked "Spouse Only" but Carolyn Berry also signed the entry declining dependent coverage. She also signed an "Employee Record Card" on the same date, electing union status with the local of the Hotel-Restaurant Employees and Bartenders Union, and indicating that she chose dependent coverage with an effective date of June 4, 1981.
According to the collective bargaining agreement between Playboy and the union local, the "health, hospitalization and life insurance benefits are reserved for all full-time employees who have completed at least ninety (90) continuous calendar days of service." During the 90-day period, on March 24, plaintiff *524 Lawrence Berry was injured in an accident. The Berrys' claim that the medical plan refused to pay his medical bills because of the 90-day waiting period. Of further note, Carolyn Berry never filed a grievance under her union's collective bargaining agreement. The core of the dispute is plaintiffs' contention that Carolyn Berry was never told that she could have chosen either salary or hourly status and that in a salaried status she would have had immediate health care benefits for herself and her husband.
The transcript of argument in the Law Division reveals that summary judgment was granted solely because Carolyn Berry was a union member and therefore subject to the collective bargaining agreement, which the trial judge interpreted as requiring recourse to prescribed grievance procedures. That Carolyn Berry was a union member is beyond cavil on this record and the trial judge correctly so found. However, this finding does not necessarily mean that the present dispute is the proper subject of a grievance claim.
The Berrys' complaint sounds in tort. They claim that they incurred extensive medical expenses because of defendants' "negligence, misrepresentation and misconduct." Specifically, they allege in the complaint that
1. On or about the latter part of February, 1981, the plaintiff, Carolyn Berry, interviewed for a job at Playboy Club, Great Gorge, Sussex County, New Jersey.
2. At that time, she was interviewed by the personnel department and the chef, Peter Enbler, all agents, servants or employees of Playboy Enterprises, Inc., Playboy of Sussex Inc., and/or ABC Corporation, a fictitious name.
* * * * * * * *
4. This plaintiff was advised by the above persons to receive her compensation by hourly wage, rather than the salary rate for her position.
5. As a result of this instruction, and unknown to the plaintiff, she became eligible for a medical benefits plan requiring a ninety-day waiting period, rather than a medical benefit plan with no waiting period. The plaintiff was never *525 advised of the second medical plan, until several weeks after employment by Todd Feit, Broiler Chef.
* * * * * * * *
7. On or about March 24, 1981, the plaintiff, Lawrence Berry, suffered injuries and required medical care. As a result, medical bills were incurred by the plaintiffs. These medical bills would not be paid by the medical benefit plan because of the ninety-day waiting period.
8. As a result of the negligence, misrepresentation and misconduct of the defendants, these plaintiffs were caused to incur extensive medical expenses.
We conclude that the claim alleged by plaintiff does not fall within the collective bargaining agreement's mandatory grievance procedure. Courts must decide if a dispute is within the scope of a collective-bargaining agreement. Machine Printers, U.S. v. Merrill Works, Inc., 12 N.J. Super. 26, 31 (App.Div. 1951). "If the subject matter of the claim is not dealt with in any of the provisions of the contract, expressly or by implication, the inference is permissible that the claim, because not within the contemplation of the contracting parties, is outside the scope of the arbitration agreement." Annotation, "Collective Labor Contract-Arbitration" 24 A.L.R.2d 752, 756 (1952). See Harmuth Eng. Co. v. Franklin Universal Bldg. Corp., 178 N.J. Super. 380, 384 (App.Div.), certif. den. 87 N.J. 390 (1981); Polshek v. Bergen Cty. Iron Works, 142 N.J. Super. 516, 521-522 (Ch.Div. 1976).
The grievance and arbitration procedure of the collective bargaining agreement between Local 69 and Playboy provided, in pertinent part, that "should differences arise between the Company, the Union, or any employee as to the meaning or application of this Agreement, the following procedures shall be followed." The prescribed procedures begin with informal steps to resolve the matter, and ultimately provide for binding arbitration if the grievance is not settled. The important thing to note is that the procedures only govern "differences ... as to the meaning or application of" the collective bargaining agreement.
*526 We find that appellants' complaint does not implicate a dispute as to the meaning or application of the collective bargaining agreement. The only provision of the agreement dealing with medical benefits is Article XVIII entitled  "Health and Welfare," which states, in pertinent part, that
The Company agrees to maintain its present health, hospitalization and life insurance benefits for all full-time employees who have completed at least ninety (90) continuous calendar days of service. The Company shall pay the full cost of such coverage for all eligible employees.
Eligible employees who elect to have dependent coverage shall contribute Five ($5.00) dollars per week toward the cost of such dependent coverage.
The complaint does not invoke a claim as to the meaning or application of the collective bargaining agreement. The language from Article XVIII of the agreement is concerned with health benefits to be maintained for employees and their dependents. Plaintiffs do not call in question the meaning or application of this provision; rather, the complaint alleges "negligence, misrepresentation and misconduct" on the part of employees of respondents in failing to advise Carolyn Berry of an alternative medical benefit plan under a salaried rather than hourly status. The statement in the complaint that the medical bills incurred "would not be paid by the medical plan because of the ninety-day waiting period" clearly indicates that there is no difference between the parties as to the meaning or application of Article XVIII. Appellants implicitly admit that they are not entitled to payment for the medical bills under the union's health plan; their complaint does not dispute the 90-day waiting period, but seeks to hold respondents liable for breaching an alleged duty to fully advise Carolyn Berry of the alternate medical benefit plan she could have opted for at the time she was hired. The collective bargaining agreement is silent regarding any such duty of Playboy.
We therefore find that appellants' complaint does not implicate a dispute as to the meaning or application of the collective bargaining agreement and thus does not fall within the agreement's mandatory grievance procedure. The Law Division judge erred insofar as he concluded that the grievance procedure *527 under the collective bargaining unit was plaintiff's sole remedy, especially since any alleged breach of duty occurred before the formal employment relationship began.
The plaintiffs have adequately pleaded a prima facie case of negligent misrepresentation. As noted, the complaint alleges that plaintiff Carolyn Berry was "interviewed by the personnel department and the chef" of Playboy and "was advised ... to receive her compensation by hourly wage rather than the salary rate." She further asserts that "as a result of this instruction and unknown to the plaintiff, she became eligible for medical benefits requiring a ninety-day waiting period, rather than a medical benefit plan with no waiting period" and that she "was never advised of the second medical plan." This, she contends, was "negligence, misrepresentation and misconduct."
Moreover, the form Carolyn Berry signed was ambiguous on the point of election of benefits for her family. Upon oral examination by deposition, she claimed: "I think I signed for a uniform and I signed to have my husband put on insurance benefits and a statement saying, yes, it was okay for them to take the benefit out of my wages. Other than that, I don't recall signing anything else, no." We find that a factual hearing is required to determine whether as a banquet cook she had an option to choose between benefit plans, (which defendants deny), and if so whether Playboy's agents properly explained Carolyn Berry's benefit options to her, as she contends they existed, and whether she was misinformed of the opportunity to elect salary status with immediate benefits. The actual merit of the Berrys' claim is, of course, for the trier of fact after development of a full record.
We find precedent for plaintiffs' claim in Wells v. Wilbur B. Driver Co., 121 N.J. Super. 185 (Law Div. 1972). There a widow-beneficiary brought an action on a group life insurance policy issued by Prudential to defendant Driver for the benefit of Driver's employees, including her deceased husband, Wells. *528 The proofs showed that before Wells' retirement, he met with Driver's personnel director and discussed his employment status. He was not advised as to any specific date that his retirement would become effective so he could not calculate the period during which he would remain protected on the group policy and have the option to convert to an individual policy.
Justice Handler of our Supreme Court, then a judge of the Superior Court, found that Driver's failure to advise Wells of the date of termination of his employment was a breach of its implied obligation to properly advise him. The defendant employer's dereliction in this regard was held actionable. On the question of negligence, Judge Handler wrote
Plaintiff has moved for summary judgment with respect to count two of the complaint sounding in negligence; Prudential has cross-moved on this issue. Plaintiff contends that if there were a loss of insurance contract by virtue of decedent's failure to exercise his privilege to convert, decedent had not been properly or carefully advised as to his insurance protection by Driver's representatives and this negligence occasioned the loss. Defendants urge that neither Driver nor Prudential owed an antecedent duty to Wells, the negligent discharge of which can give rise to liability in tort.
An individual may not be obligated to perform a service for another, yet, upon his voluntary undertaking to act, may be found liable in tort for negligently performing or failing to perform the service gratuitously assumed, even in the absence of a contractual undertaking. Valdez v. Taylor Automobile Co., 129 Cal. App.2d 810, 278 P.2d 91 (D.Ct.App. 1954); Prosser, Torts, § 32 at 190 (1941). The principle that a volunteer must act with due care recurs in all areas of the tort field. E.g., O'Neill v. Suburban Terrace Apts., Inc., 110 N.J. Super. 541 (App.Div. 1970); Barbarisi v. Caruso, 47 N.J. Super. 125 (App.Div. 1957); Freddi-Gail, Inc. v. Royal Holding Corp., 45 N.J. Super. 471 (App.Div. 1957); LaBrasca v. Hinchman, 81 N.J.L. 367 (Sup.Ct. 1911); Restatement, Torts 2d, § 324 at 139 (1965); Restatement, Agency, 2d § 378 at 175 (1958); Seavey, "Reliance Upon Gratuitous Promises or Other Conduct," 64 Harv.L.Rev. 913 (1951).
In the present case a triable issue of fact endures with respect to whether, by virtue of any express contractual undertakings, including the employer-employee relationship or because of a course of dealing with its employees, Driver owed Wells, as its employee, a duty to give adequate advice concerning his options upon retirement including his insurance protection. Such an issue at trial would involve an elucidation of the duties of Driver's personnel officers vis-a-vis employees, the administration of the group insurance policies, the purpose and nature of the meeting with the Wellses on November 10, 1969, and the extent to which the Wellses relied upon the superior knowledge of Driver's representatives. A trier of fact might well conclude that there was a duty on *529 the part of Driver to guide Wells through the maze of his retirement and insurance options, or that there was a voluntary undertaking sufficient to posit such a duty on the part of Driver. That being so, the employer was bound to exercise reasonable care in the discharge of that duty, and liability would attach if it were determined that reasonable care was not exercised and Wells suffered a loss of insurance as a proximate result thereby. This would be within the parameters of the common law doctrine that one who undertakes to perform an act and performs it negligently is liable for his malfeasance. Dudley v. Victor Lynn Lines, Inc., 48 N.J. Super. 457 (App.Div. 1958), rev'd on other grounds, 32 N.J. 479 (1960); LaBrasca v. Hinchman, supra; cf. Stockmen's Nat. Bank of Casper v. Richardson, 45 Wyo. 306, 18 P.2d 635 (Sup.Ct. 1933); Carr v. Maine Central R. Co., 78 N.H. 502, 102 A. 532 (Sup.Ct. 1917). No such course of action, however, was undertaken by Prudential. Nor is there any factual or other basis to imply an antecedent duty owed by it to Wells. Moreover, the facts do not suggest that in advising Wells as to his status and rights as a retired employee, Driver through its representatives acted as the agent for Prudential.
Summary judgment in favor of Prudential with respect to plaintiff's complaint of negligence is granted. Summary judgment in favor of plaintiff against Driver on the issue of negligence is denied, there being genuine issues of material facts to be tried. [Id. at 203-204]
In the present case, the Berrys' complaint against Playboy is based upon a duty akin to that discussed in Wells. Carolyn Berry alleges that she was advised to become an hourly rather than a salaried employee. The trier of fact must determine whether Playboy's representatives gave this advice and failed to make an adequate disclosure of alternatives. The trier of fact must then determine whether respondents failed "to exercise reasonable care in the discharge of that duty" and whether the Berrys' lack of coverage was caused thereby. The question of whether such a result was a recognizable and foreseeable risk of respondents' allegedly negligent conduct is an issue properly reserved to the trier of fact. Carrino v. Novotny, 78 N.J. 355, 365 (1979).
Several decisions in other jurisdictions hold that an employer may be liable for its negligence in circumstances similar to the instant case and Wells. In Erion v. Timken Co., 52 Ohio App.2d 123, 368 N.E.2d 312 (Ohio App. 1976), plaintiff brought an action against her deceased husband's former employer for benefits under a pension plan. The proofs showed Mr. Erion *530 retired on July 25, 1969 and died in 1974. Seeking survivors' benefits, Mrs. Erion contacted Hoy, the employer's staff member who advised employees on the pension plan, but was informed that she was not entitled to any benefits because her husband had retired before the August 1, 1969 qualifying date. Hoy testified that he had met with decedent on July 3, 1969 but had not discussed this matter because it was company policy to respond to direct inquiries, but not to voluntarily offer suggestions, advice or assistance to a potential retiree. Hoy further testified that he was aware that decedent would have had to remain at work until August 1, 1969 in order for his widow to qualify for survivors' benefits. At the conclusion of plaintiff's proofs the trial court directed a verdict for the employer on the claim that it had failed to advise decedent on the effect of retiring before August 1. The widow appealed.
The Ohio Court of Appeals concluded that the trial court erred in directing a verdict on this issue. It stated, in pertinent part, that
... under the facts of this case, there was a fiduciary relationship established between the Timken Company and the employees in regard to the consultations it had through its insurance department with the prospective retirees. Although we would not hold the Timken Company to the duty of explaining every conceivable legal ramification of the pension plan to its employees, certainly the more obvious and pertinent points should have been brought to the attention of the employees without the requirement of a specific question on the subject by the employee.
We hold that defendant Timken Company should have informed that [sic] Mr. Erion that his retirement before August 1, 1969, would deny his wife the survivors' benefits under the new plan, which would otherwise have been available to her had retirement been delayed until after August 1, 1969.
Not having carried out this responsibility to one of its employees in this regard, under the facts of this case, would constitute negligence on the part of the employer Timkin Company. [368 N.E.2d at 317.]
See Boucher v. Valus, 6 Conn. Cir. Ct. 661, 298 A.2d 238 (1972), where an employer was held liable for negligently misrepresenting the nature of insurance coverage to the detriment of an employee. Also, see Schlansky v. United Merchants & Manufacturers, Inc., 443 F. Supp. 1054, 1059-1060, 1064 (S.D.N.Y. 1977), where an employer's motion to dismiss a former employee's *531 claim of negligent misrepresentation as to a pension plan was denied.
In Gediman v. Amheuser Busch, Inc., 299 F.2d 537 (2nd Cir.1962), Judge Friendly, applying New York law, held that the failure of the employer's pension consultants to warn an employee that an election to take cash distributions at a later date would enormously reduce the death benefit on the event of employee's death before that date allowed a recovery in tort against the employer. To reach this holding, Judge Friendly relied in part on § 552 of the Restatement of Torts[2], and Judge Cardozo's famous opinion in Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275 (1922). Glanzer was a case where the public weigher was liable for furnishing an erroneous weight certificate causing the plaintiff, who had not employed him, to overpay for a purchase of beans. Glanzer has been cited with approval by our Supreme Court as recently as Rosenblum v. Adler, 93 N.J. 324, 337-338 (1983). In Gediman Judge Friendly stated that the relationship between defendant, its pension consultants and the deceased "was plainly of the sort, described in the Restatement, where negligent communication, or failure *532 to communicate with clarity, may give rise to liability." 299 F.2d at 544. "Having undertaken to advise, defendant was bound to advise clearly." Id. at 546. Citing Glanzer, 135 N.E. at 275, the court observed "that one who assumed to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." 299 F.2d at 546.
Because material issues of fact appear to exist on this record as to whether Playboy adequately advised Carolyn Berry as to her options for supplementary benefits upon her assumption of employment, we reverse and remand for plenary hearing.
NOTES
[1] Beadling v. Sirotta, 39 N.J. 34, 35 (1962) states:

The legal issue which the parties seek to present carry important implications and they should not be determined in a vacuum or in academic fashion; the preferable procedure is to permit the matter to be tried and determined in regular course. Cf. Public Affairs Assoc. v. Rickover, 369 U.S. 111 [112], 82 S.Ct. 580 [581], 7 L.Ed.2d 604, 606 (1962); State v. Hudson County News Co., 35 N.J. 284, 288 (1961).
See also People Express Airlines, Inc. v. Consolidated R.R. Corp., 194 N.J. Super. 349, 355 (1984).
[2] Restatement of Torts 2nd, § 552 states:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.