**Mitchell P. WORBETZ Appellant,**

v.

**WARD NORTH AMERICA, INC. Appellee.**

**No. 02–1388.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) Nov. 1, 2002.

Decided Dec. 5, 2002.

Before SLOVITER and FUENTES, Circuit Judges and FULLAM,* District Judge.

* The Honorable John P. Fullam, United States    District Judge for the Eastern District of

OPINION OF THE COURT

FUENTES, Circuit Judge.

In this matter, plaintiff, Mitchell P. Worbetz, filed a complaint against defendant Ward North America, Inc., an insurance claims administrator, asserting a violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19–3 *et. seq.* ("CEPA") and claims for breach of contract, promissory estoppel, fraud, and intentional and negligent misrepresentations arising out of his employment as an insurance claims adjuster by the defendant. Worbetz appeals from, among other things, (1) the entry of summary judgment in favor of defendant on his breach of contract, negligent misrepresentation, and promissory estoppel claims; (2) the District Court's reconsideration of its order granting summary judgment on the CEPA claim; (3) the final judgment of "no cause" entered after a jury trial on the fraud and CEPA claims; and (4) a number of the trial court's rulings. We affirm.

I. *Facts and Procedural Background*

The factual allegations underlying this case are well known to the parties, and therefore, they are not detailed here, except to the extent that they directly bear upon the analysis. Ward North America, Inc. is an independent insurance adjusting and claims management company with home offices in California. Ward hired Worbetz as a claims adjuster to begin in December of 1997 at Ward's New Jersey office. Worbetz was initially hired to work on a commission basis. In March 1998, the adjusters working on a commission basis, including Worbetz, were switched to salaried positions. Shortly thereafter, Ward lost one of its major insurance work providers, GAN, Inc., and thus a significant amount of its claims adjusting business. In January 1999, Worbetz was given work on a new account with the Coregis Insurance Company, which mainly involved claims venued in New York. In the course of his work on the Coregis account, Worbetz claims to have discovered that Ward was adjusting claims in the State of New York illegally, because Ward did not have a license to adjust claims in New York. According to Worbetz, on March 9, 1999, he exercised his right under CEPA to refuse to engage in an illegal activity, i.e. adjusting claims in New York, and was therefore given an ultimatum to handle the files or consider himself fired. Worbetz walked out on his job that day and was formally terminated by Ward two days later.

In his second amended complaint, Worbetz asserted, among other things, that he was fraudulently and negligently induced to come work for Ward as an insurance adjuster by representations that Ward had two years' worth of work for him pursuant to its contractual relationship with GAN. Worbetz alleged that he accepted the position with Ward in reliance on representations that he would work on the GAN account and be paid on a commission basis, with unlimited earning capacity. Only later, he claims, did he discover that Ward did not have a contract with GAN at the time he was hired. Worbetz also alleged that he was switched to working on a salary basis and that his salary was drastically and wrongfully reduced over the course of his employment. Worbetz alleged that he was terminated for expressing concerns over Ward's licensing to adjust claims for Coregis in New York. Based on these allegations, Worbetz brought claims, *inter alia,* for violation of CEPA, fraudulent inducement, negligent and intentional misrepresentation, breach

Pennsylvania, sitting by designation.

of contract, and unjust enrichment/ quantum meruit.

With respect to Worbetz's claims arising out of representations concerning the existence of a contract with GAN, Ward countered that the employees making the representations did not have knowledge or belief of the falsity of their statements about the GAN contract given that, for some time, there had been an ongoing business relationship between Ward and GAN. As to the breach of contract claim, Ward asserted that Worbetz was an "at will" employee at all times, that it had the right to change his pay structure, and that even if Worbetz was hired for a set term of employment, he later signed documents that made it clear to him that he was employed at will and that he or Ward could terminate the employment relationship with or without cause.

Ward denied that Worbetz's termination was retaliatory in nature. Ward asserted that Worbetz walked out on his job after being presented with a memorandum by his supervisor Stephen Reilly placing Worbetz on written warning for deficiencies in his work performance separate and apart from his refusal to handle the Coregis account. Ward asserted that, apart from instructing Worbetz to work on the Coregis account, Reilly instructed Worbetz in the memo to (1) return phone calls within 24 hours; (2) timely diary all field assignments; (3) meet Ward billable standards; (4) advise him when Worbetz was going out into the field and tell him which files he was handling; (5) allow him to review all client reports before they were sent out; and (6) call him directly when calling out sick. Ward maintained that Reilly did not know of Ward's licensing concerns prior to March 1999.

Initially, the District Court granted Worbetz summary judgment on his CEPA claim and granted Ward summary judgment on Worbetz's breach of contract and negligent misrepresentation claims. Acting on Ward's motion for reconsideration of the CEPA claim, the District Court reversed its earlier grant of summary judgment in favor of Worbetz on the basis that there was a genuine issue of material fact as to whether Reilly, the supervisor who insisted that Worbetz work on the Coregis Account, actually knew about Worbetz's licensing concerns. Worbetz also moved for reconsideration, urging the District Court to revisit its denial of summary judgment in his favor on his intentional misrepresentation claim and his claim that he was fraudulently induced to work for Ward, and its grant of summary judgment in favor of Ward on his negligent misrepresentation claim, which the Court broadly construed to be a negligent misrepresentation/ promissory estoppel/ breach of good faith claim. The District Court denied Worbetz's motions for reconsideration. The case proceeded to trial on the fraud and CEPA claims.

At the close of evidence at trial, Worbetz moved for a directed verdict on his CEPA claim. The District Court denied his motion and let the case go to the jury. The jury returned with a verdict for the defense on all counts. Worbetz then renewed his motion for judgment as a matter of law and, in the alternative, moved for a new trial. The District Court denied the motion. In the instant appeal, Worbetz appeals each of the rulings described above and the final judgment. Additionally, Worbetz asserts that the District Court abused its discretion by allowing Ward to present evidence of a settlement to the jury and that the trial judge abused his discretion by leaving the bench in order to provide the jury with a dictionary definition of retaliation.

## II. *Jurisdiction and Standard of Review*

The District Court exercised jurisdiction over this matter under 28 U.S.C.

§ 1332(a)(1). We have appellate jurisdiction under 28 U.S.C. § 1291.

The standard of review applicable to an order granting summary judgment is plenary. *See Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir.2002). We apply the same test employed by a District Court under Federal Rule of Civil Procedure 56(c). *See Kelley v. TYK Refractories Co.,* 860 F.2d 1188, 1192 (3d Cir.1988).

Our review of the denial of a motion for judgment as a matter of law is plenary. *See Warren v. Reading School District,* 278 F.3d 163, 168 (3d Cir.2002) (citing *Fultz v. Dunn,* 165 F.3d 215, 218 (3d Cir. 1998)). A court may grant a judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury" to have found for the prevailing party. *See Olefins Trading, Inc. v. Han Yang Chem Corp.,* 9 F.3d 282, 288 (3d Cir.1993) (citing Fed.R.Civ.P. 50(a)(1) and (b)). We review the district court's ruling on a motion for a new trial for abuse of discretion unless the court's denial of the motion is based on application of a legal precept, in which case the standard of review is plenary. *See Smith v. Holtz,* 210 F.3d 186, 200 (3d Cir.2000) (citing *Rotondo v. Keene Corp.,* 956 F.2d 436, 438 (3d Cir.1992)). The district court should grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand. *See id.* (citing *Klein v. Hollings,* 992 F.2d 1285, 1290 (3d Cir.1993)).

The standard of review for a motion to reconsider is whether there has been an abuse of discretion. *See Bushman v. Halm,* 798 F.2d 651, 656 n. 9 (3d Cir.1986). An abuse of discretion standard also applies to our review of evidentiary rulings. To the extent that the ruling is based on interpretation of one of the Federal Rules of Evidence, our review is plenary. *See In*

*re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 749 (3d Cir.1994).

## III. *Discussion*

### A. *Dismissal of Breach of Contract, Promissory Estoppel, and Negligent Misrepresentation Claims*

■ Worbetz asserts that the District Court erred in concluding that he was an "at will" employee, asserting that there was an express contract, or in the alternative, an implied contract between himself and Ward, pursuant to which his employment for a term of two years and his pay structure were established. The District Court concluded that Worbetz was an "at will" employee based on a "Statement of Understanding" and non-compete agreement he signed, both dated November 21, 1997. The "Statement of Understanding" expressly provided that his employment would be considered "at will" and that no written or implied contractual agreement existed. Similarly, the non-compete agreement provided:

> 5.9 *Employment at Will.* Employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of the Company or the Employee. Nothing contained in this Confidential Agreement shall limit or otherwise alter the foregoing.

App. at 2343. This is the final provision of the non-compete agreement and it appears on the signature page, below "EMPLOYEE HAS READ THIS AGREEMENT CAREFULLY AND UNDERSTANDS ITS TERMS." *Id.* (emphasis in original).

The District Court rejected Worbetz's argument that these "at will" provisions were superseded by subsequent negotiations based in part on the "Acknowledgment of Receipt" form Worbetz signed on March 25, 1998, after receiving Ward's

Employee Handbook. The form "Acknowledgment of Receipt" provides, in relevant part:

> I understand that Ward North America is an "at will" employer, which means that either party may terminate employment with or without cause. I understand that this agreement supersedes any previous written or oral agreements, and that no manager or any other employee of the Company is authorized to make any representation to the contrary, unless it is expressed in an individual written employment contract signed by the President/CEO of the Company.

App. at 2274 (emphasis in original).

Based on the form and substance of these "at will" provisions, we reject Worbetz's assertions that these provisions were not conspicuous enough to attract attention and that there was therefore a question of fact as to whether Worbetz was employed by Ward pursuant to an employment contract. We agree with the District Court that Worbetz was an employee "at will" and therefore could be terminated with or without cause and was subject to changes in his pay structure. *See Witkowski v. Thomas J. Lipton, Inc.,* 136 N.J. 385, 643 A.2d 546, 552 (1994) (New Jersey law provides that "an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine.") (citing cases); *Mita v. Chubb Computer Services, Inc.,* 337 N.J.Super. 517, 767 A.2d 989, 994 (App. Div.2001) ("[a]n employer is free to change the terms of employment.").

█ Worbetz's promissory estoppel claim necessarily fails as well. In order to recover on a promissory estoppel claim, a plaintiff must show that there was a "clear and definite promise" made with the expectation that plaintiff rely on it and a detriment incurred by the plaintiff as a result of his reasonable reliance on such promise. *See Peck v. Imedia, Inc.,* 293 N.J.Super. 151, 679 A.2d 745, 752 (App. Div.1996). Because Worbetz agreed to be employed "at will" in documents he signed before and during the course of his employment, he cannot show reasonable reliance on a promise of employment on a commission basis for a two year term.

█ Worbetz next asserts that the District Court erred in granting summary judgment in favor of Ward on his claim for negligent misrepresentation. Under New Jersey law, "[a]n incorrect statement, negligently made and justifiably relied upon, may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance." *H. Rosenblum, Inc. v. Adler,* 93 N.J. 324, 461 A.2d 138, 142–43 (1983). The District Court described Worbetz's negligent misrepresentation claim as a fallback position taken by him in the event that he was unable to prove that Ward's employees' statements about the GAN contract were knowingly false. The Court held that Worbetz failed to assert a claim for negligent misrepresentation "on negligently relayed information about a contract between two other parties" out of concern that allowing Worbetz to proceed with such a claim would "convert to tort all breach of contract claims alleging that one party gave incomplete information during the process of negotiating that contract." App. at 30–31. Indeed Worbetz does not come forward with any authority that supports his assertion that a cause of action for negligent misrepresentation may be based on a representation that a third party contract is in place.

Worbetz directs the Court's attention to *Berry v. Playboy Enterprises, Inc.,* 195 N.J.Super. 520, 480 A.2d 941 (App.Div. 1984). In *Berry,* an employee and her husband sued Playboy on the basis that its

agents misrepresented her options with respect to a health care benefit plan when she was hired to be a cook at one of defendant's resorts. Plaintiffs claimed that, as a result of the misrepresentation, they suffered money damages due to lack of medical benefits when the plaintiff husband was injured during the first 90 days of his wife's employment. *See id.* at 942. The court reversed the lower court's grant of summary judgment in favor of the defendant and held that the plaintiffs presented a *prima facie* negligent misrepresentation claim. *See id.* at 945. The court found precedent for plaintiffs' claim in *Wells v. Wilbur B. Driver Co.*, 121 N.J.Super. 185, 296 A.2d 352 (Law Div.1972), another case involving agents of a defendant failing to properly advise a plaintiff as to insurance protection. In his brief, Worbetz asserts that "[u]nder New Jersey law, if an employer negligently provides or fails to provide information regarding the employment terms or benefits, they [sic] may be held liable for their [sic] negligence." Appellant's br. at 32. This proposition is supported by *Berry*. However, *Berry* and other New Jersey cases do not support the broad application of the doctrine of negligent misrepresentation advanced by Worbetz. We therefore agree with the District Court that, under the facts of this case, Worbetz did not present a viable negligent misrepresentation claim.

## B. *Reconsideration of CEPA Claim*

■ Worbetz asserts that supervisor Stephen Reilly's knowledge of his concerns is irrelevant to whether Ward retaliated against him on the basis of his licensing concerns and, therefore, the District Court erred in ruling against him on his CEPA claim when acting on cross-motions for reconsideration. We note as a preliminary matter that the District Court did not err in entertaining the cross-motions for reconsideration. "The purpose of a motion

for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986) (citing *Keene Corp. v. International Fidelity Insurance Co.,* 561 F.Supp. 656, 665 (N.D.Ill.1982)). A motion for reconsideration may not be used as a means to argue new facts or issues that were not presented to the court in the context of the matter previously decided. *See Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del. 1990). It is, however, within the District Court's discretion to grant a motion for reconsideration where the court "made an error not of reasoning but of apprehension." *Id.* at 1241 (citation omitted).

In the instant matter, the District Court granted Ward's motion for reconsideration of its grant of summary judgment in favor of Worbetz on his CEPA claim because it overlooked portions of Ward's brief in opposition to Worbetz's summary judgment motions and portions of Reilly's deposition testimony referenced therein. *See* App. at 40–41. The Court expressly noted that it was not basing its decision on two new pieces of evidence which Ward appended to its motion for reconsideration because they were not presented at the time that the original motion for summary judgment was decided. The Court explained that "[t]he previously briefed and argued summary judgment motion was not a dress rehearsal for the reconsideration motion." *Id.* at 40. We conclude that the District Court applied the correct standard and acted well within its discretion in deciding to entertain Ward's motion for reconsideration of the CEPA claim.

■ Worbetz asserts that questions regarding intent to retaliate arise only in cases where the defendant comes forward

with an (allegedly) pretextual basis for the retaliatory act or the plaintiff is proceeding on a mixed motives theory of recovery. This reading of CEPA is contrary to the express terms of the statute, which forbids an employer from taking retaliatory action against an employee "because" he engages in one of the specified acts. *See* N.J. Stat. Ann. § 34:19-3 (West 2002).[1] Moreover, Worbetz introduced into evidence a memorandum to Ward from supervisor Reilly which gave Worbetz written warning based on a number of areas of his job performance with which Reilly was dissatisfied. In its order on the cross-motions for reconsideration, the District Court explained that, "[i]f a jury decides that Reilly was unaware of Worbetz's licensing complaints, then it may also conclude that Worbetz was constructively discharged because of performance-related concerns rather than over his refusal to work on New York files." App. at 42. Because Ward responded to Worbetz's claims by coming forward with evidence calling into question whether his supervisor knew of his licensing concerns, it successfully presented a fact issue as to whether an intent to retaliate motivated Worbetz's discharge and the District Court properly reversed its earlier grant of summary judgment in Worbetz's favor on the CEPA claim. *See, e.g., Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 92 (3d Cir.1999) (a CEPA plaintiff must show a causal link between the protected activity in which he engaged and the adverse employment action take by his employer) (citing cases).

C. *Denial of Renewed Motion for Judgment as a Matter of Law on Plaintiff's CEPA claim, or in the Alternative, for a New Trial*

■ Worbetz asserts that the jury's finding in favor of Ward on his CEPA claim was contrary to the weight of the evidence and that the District Court erred in not directing a verdict in his favor on this claim. The District Court correctly explained that "[a] court may grant a renewed motion for judgment as a matter of law if 'there is *no* legally sufficient evidentiary basis for a reasonable jury to have found for' the prevailing party." App. at 107 (citation omitted) (emphasis added). In this case, there was an evidentiary basis supporting the jury's finding that Ward did not violate Worbetz's rights under CEPA.

The Court granted judgment as a matter of law in Worbetz's favor with respect to the first interrogatory, "[w]ith respect to plaintiff's CEPA claim, did the plaintiff prove by a preponderance of the evidence that plaintiff reasonably believed that a policy or procedure of the defendant was fraudulent or in violation of law?" App. at 1169. The Court found that the jury "could not but find the following facts to be true as alleged ... The plaintiff reasonably believed that Ward was engaged in the adjusting of insurance claims in New York without a New York corporate ad-

---

1. New Jersey's CEPA statute provides, in pertinent part:

   An employer shall not take any retaliatory action against an employee *because* the employee does any of the following:

   \* \* \* \*

   c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
   (1) is in violation of a law, or a rule or regulation promulgated pursuant to law or,

   if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;
   (2) is fraudulent or criminal; or
   (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

   N.J. Stat. Ann. § 34:19-3(c) (West 2002) (emphasis added).

juster license and that if he continued to do so as of March 1999, he would also be engaged in unlawful conduct with respect to New York files." *Id.* Worbetz asserts that, in light of the grant of a directed verdict in his favor on the first interrogatory, the jury's answer of "No" to the second interrogatory was nonsensical and against the weight of the evidence. The second interrogatory was: "Did plaintiff, prove by a preponderance of the evidence, that defendant took adverse employment action against him by terminating him?" App. at 1815. Worbetz asserts that this is so because he was given an ultimatum to work on the New York files or consider himself fired and he exercised his rights under CEPA to refuse to engage in the illegal activity and considered himself fired. In support of this assertion, Worbetz argues that, when the Court, acting on Ward's motion for reconsideration, revoked its grant of summary judgment to him on his CEPA claim, it identified as a fact question for the jury only whether supervisor Reilly, who gave him the ultimatum, was aware of the licensing concerns and therefore intended to retaliate. Worbetz argues that, because the evidence presented at trial showed that Reilly was aware of the licensing concerns at the time he made the ultimatum, retaliatory intent was proven and he should have prevailed on his CEPA claim.

The District Court considered these arguments when it was presented with Worbetz's renewed motion for judgment as a matter of law. We adopt the District Court's well-reasoned rejection of this argument. After hearing oral argument on Worbetz's motion, the Court ruled from the bench as follows:

> Although this Court, in [its] June 28, 2001 Opinion, originally granted summary judgment with regard to the CEPA claim in favor of plaintiff, it vacated this summary judgment on August 2, 2001, finding uncertainty as to whether Ward employee Stephen Reilly knew of plaintiff's complaints regarding plaintiff's license issues. Plaintiff asserts that the evidence proffered at trial, that Mr. Reilly admitted that he was aware of plaintiff's complaints, has negated the only issue that prevented summary judgment from being granted to plaintiff before trial.

\* \* \* \*

Testimony of various employees of the defendant, however, indicate [s] that the jury had a sufficient evidentiary basis before it, that the plaintiff was not terminated for reasons arising from his refusal to adjust New York State claims.

\* \* \* \*

Unlike prior summary judgment practice, the trial was highly textured and nuanced as the defense probed the timing and motives of plaintiff's decision to leave employment. It was for the jury to determine whether to accept the plaintiff's version of his reasons why he walked off the job on March 9th, or to reconstruct events and circumstances as the defendant presented them, laying the foundation that the defendant had, in fact, offered suitable alternative employment to Mr. Worbetz ... which Mr. Worbetz reasonably refused. The suitable alternative employment involved a field position for New Jersey cases.

\* \* \* \*

The jury could find from the evidence, that Ward at its New Jersey office, had received many new Coregis files; that activity on those files would have required field activity in New Jersey; that the field job was a real job that Mr. Worbetz could have performed; and, finally, that Mr. Worbetz made a decision to resign rather than to accept the New Jersey field position. This squarely un-

dermines his claim that he was fired for failing to adjust New York files or for having raised the New York insurance issue with superiors, or with the state authorities.

* * * *

The jury had the evidence about whether he was terminated or whether he resigned. This was a question that could go either way depending upon assessments of credibility and weight to be given to testimony. It was their determination, apparently, by their answer to Interrogatory Two, that Mr. Worbetz's testimony about his motive for leaving was not to be believed. That credibility finding is in the province of the jury, and there's more than a sufficient quantum of evidence to suggest that he did resign, that he resigned for reasons that were not a constructive discharge for failure to adjust New York files.

App. at 108–12. Our review of the trial record supports the District Court's conclusion that the jury's finding against Worbetz on his CEPA claim was supported by competent evidence presented by Ward as to what motivated his resignation. We also agree with the District Court that the jury's verdict was not against the weight of the evidence. We conclude that the District Court therefore properly denied Worbetz's motion for a new trial.

### D. References to Documents Related to Settlement by Ward's Counsel

■ Worbetz asserts that the District Court erred in permitting counsel for Ward to cross-examine him as to documents attached to correspondence from Worbetz's counsel to Ward's legal department which were labeled "For Settlement Purposes Only." Additionally, Worbetz complains that Ward's counsel held the settlement correspondence in his hand, where the jury could see it, during closing

arguments, suggesting that the events leading up to Worbetz's termination were a set-up for a lawsuit.

Rule 408 of the Federal Rules of Evidence provides that "[e]vidence of conduct or statements made in compromise negotiations" is inadmissible. Fed.R.Evid. 408. The correspondence was not admitted into evidence and was only used for the limited purpose of establishing that, within a few days of plaintiff's resignation, his attorney served Ward with a draft of the complaint along with requests for discovery. No evidence of settlement negotiations between the parties was presented to the jury. We conclude that the District Court did not err in allowing cross-examination as to the correspondence.

Our review of the record also indicates that Worbetz did not object to the use of the correspondence during closing arguments. The District Court observed that not more than 10 to 15 seconds of a defense closing that took between 45 minutes to an hour was devoted to the correspondence at issue. We agree with the District Court that the mere sight of this correspondence was not so prejudicial as to warrant the grant of a new trial.

### E. Use of Dictionary Definition of "Retaliation"

■ Worbetz asserts that the District Court erred in providing a dictionary definition of "retaliation" to the jury rather than using the definition of the word provided by CEPA case law and that the Court prejudiced the jury by stating to Ward's counsel "here is that definition you wanted. Appellant's br. at 47. The transcript reveals that the Judge said: "Here's your definition." App. at 1792. We discern no prejudice from this statement. The definition of "retaliation," read to the jury was: "to repay, as an injury, in kind. To return like for like, especially, to get

revenge." App. at 1792. This definition is consistent with case law requiring the plaintiff in a CEPA action to show a causal connection between the protected activity and the adverse employment action taken by the employer. *See, e.g., Blackburn,* 179 F.3d at 92.

### F. *Judgment as a Matter of Law on Worbetz's Fraud Claim*

■ Finally, Worbetz asserts that he was entitled to judgment as a matter of law on his claim that he was induced to come work for Ward by fraud. The elements of fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief on the part of the defendant of its falsity; (3) an intention that the other party rely on it; (4) reasonable reliance on the material misrepresentation by the other party; and (5) resulting damages. *See Jewish Ctr. of Sussex County v. Whale,* 86 N.J. 619, 432 A.2d 521, 524 (1981); *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 691 A.2d 350, 367 (1997). The District Court denied the motion in part based on evidence that Worbetz's reliance on two years' worth of work was not reasonable in light of evidence that he was an "at will" employee. We discern no error in this ruling.

### IV. *Conclusion*

After a careful review of the record and the parties' remaining arguments, we find no basis for disturbing Judge Simandle's well-reasoned rulings or the jury verdict entered in Ward's favor in this case. We therefore affirm each of the District Court rulings on appeal.